CASE NO. 21-1144

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

BRYAN SEALE,

      Plaintiff/Appellant,

v.

GARY PEACOCK, individually, and
JOHN DOES and/or JANE DOES,
individuals whose true name(s) are
unknown,

      Defendants/Appellees.

_____

On Appeal from the United States District Court for the District of Colorado
Honorable Kathleen M. Tafoya
District Court Case No. 01:19-cv-03559-KMT
_____

PLAINTIFF/APPELLANT BRYAN
SEALE'S OPENING BRIEF
_____

Brian Molzahn
Jared R. Ellis
HALL & EVANS, LLC
1001 Seventeenth Street, Suite 300
Denver, Colorado 80202
(303) 628-3300
molzahnb@hallevans.com
ellisj@hallevans.com
COUNSEL FOR PLAINTIFF/APPELLANT
BRYAN SEALE

ORAL ARGUMENT REQUESTED

# **TABLE OF CONTENTS**

STATEMENT OF PRIOR APPEALS.................................................................1

JURISDICTIONAL STATEMENT .............................................................. 2

ISSUES PRESENTED ...........................................................................  3

STATEMENT OF THE CASE.......................................................................4

      I.  Facts ……………………………….……………….................4

           A. Anonymous Letters to Seale's Acquaintances…..……..…..…  6

           B.  Unauthorized Access to Seale's CTM Account…..……..……..7

           C.  The Impact on Seale's Business Reputation…..……..…..……..7

      II. Procedural History………………………………....…………… 9

           A. Dismissal of Seale's Claims Against Peacock………...…….. 9

           B. Seale's Motions to Amend the Judgment and Complaint…….. 16

           C. Seale's Attempt to Substitute Peacock for John
              Doe Defendants ……………………….……..……….…… 22

SUMMARY OF THE AGRUMENT …………………………………  28

ARGUMENT ………………………………………………………  31

      I.      THE MAGISTRATE JUDE ERRED IN DISMISSING
            SEALE'S SCA CLAIM..……..……………………………  31

           A. Standard of Review…………..……..………………….…..31

           B. Seale's SCA Claim was Improperly Dismissed
             For Failure to plead Actual Damages………………………… 32

             1. Relief under the SCA does not require actual damages………33

             2. Seale's allegations He was entitled to Punitive Damages
             And Attorney Fees were Sufficient to State a SCA Claim………40

           C. Seale's Factual Allegations were Sufficient to
             Establish that He Suffered Actual Damages………………… 43

II.    THE MAGISTRATE JUDGE ABUSED HER
       DISCRETION IN DENYING SEALE'S MOTION
       TO AMEND TO SUBSTITUTE PEACOCK FOR
       JOHN DOE DEFENDANTS …..……..……'…..……'…..……. 45

   A.  Standard of Review ……………….…………….…………… 45

   B. The Magistrate Judge Applied the Incorrect Legal
      Standard in Denying Seale's Second Motion
      to Amend the Complaint…………………………….…………… 46

   C. Assuming it was Appropriate to Consider Whether Seale
   Demonstrated "Good Cause," Seale Met That Standard……………49

III.   THE MAGISTRATE JUDGE ERRED IN DISMISSING
       SEALE'S CLAIMS WITH PREJUDICE …………………… 51

   A. Standard of Review ………………………………………… 51

   B. The Magistrate Judge Applied an Incorrect Legal Standard
      in Dismissing the Claims Against Peacock with Prejudice……. 52

CONCLUSION ………………………………………………………... 57

CERTIFICATE OF COMPLIANCE.................................................................58

CERTIFICATE OF DIGITAL SUBMISSION ............................................. 59

CERTIFICATE OF SERVICE.........................................................................60

Attachment 1 - [ECF] 42 Order on Defendant's
Motion to Dismiss Plaintiff's Amended Complaint Filed 08/27/2020...............61

Attachment 2 - [ECF] 57 Order on Plaintiff's Forthwith
Motion to Amend Complaint Filed 03/11/2021.................................................69

*Table of Authorities*

*Cases*

*Aguiar v. MySpace L.L.C.,*
  **2017 U.S. Dist. LEXIS 165463 (C.D. Cal. May 5, 2017)** ............................ 34

*Albers v. Bd. of Cnty. Comm'rs,*
  **771 F.3d 697 (10th Cir. 2014)** ................................. 31, 45

*Ashcroft v. Iqbal,*
  **556 U.S. 662 (2009)** ............................................... 30, 31, 43

*Baca v. Berry,*
  **806 F.3d 1262 (10th Cir. 2015)** ................................. 50-51

*Bell Atl. Corp. v. Twombly,*
  **550 U.S. 544 (2007)** ................................................ 30, 31

*Bixler v. Foster,*
  **596 F.3d 751 (10th Cir. 2010)** ................................. 30, 31

*Brereton v. Bountiful City Corp.,*
  **434 F.3d 1213 (10th Cir. 2006)** ............................... 51, 52

*Brooks Grp. & Assocs. v. LeVigne ,*
  **2014 U.S. Dist. LEXIS 52479 (E.D. Pa. Apr. 15, 2014)** ................ 34

*Cardinal Health 414, Inc. v. Adams,*
  **582 F. Supp. 2d 967 (M.D. Tenn. 2008)** ........................ 34

*Cedar Hill Assocs. v. Paget,*
  **2005 U.S. Dist. LEXIS 32533 (N.D. Ill. Dec. 9, 2005)** ............ 34, 37

*Chadha v. Chopra,*
  **2012 U.S. Dist. LEXIS 172219 (N.D. Ill. Dec. 5, 2012)** ............... 34, 39, 42, 43

*Chase v. Divine,*
  **543 F. App'x 767 (10th Cir. 2013)** .................................. 50, 51, 52

*Chavan v. Cohen,*
  **2015 U.S. Dist. LEXIS 87351 (W.D. Wash. July 6, 2015)** ............ 34

*Chavan v. Cohen,*
  **2015 WL 4077323 (W.D. Wash. July 6, 2015)** ................. 13

iv

*Christy Sports, L.L.C. v. Deer Valley Resort Co.*,
   555 F.3d 1188 (10th Cir. 2009) ................................................ 31, 43

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018) ................................. 12-13, 33

*Conley v. Gibson*,
   355 U.S. 41, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) ........................... 45

*Cornerstone Consultants, Inc. v. Prod. Input Sols., L.L.C.*,
   789 F. Supp. 2d 1029 (N.D. Iowa 2011) ...................................... 44

*Cressman v. Thompson*,
   719 F.3d 1139 (10th Cir. 2013) ................................................ 31

*Doe v. Chao*,
   540 U.S. 614 (2004) ................................................. 35, 36, 37

*Dubray v. Intertribal Bison Coop.*,
   192 P.3d 604 (Colo. App. 2008) ............................................... 30

*Erickson v. Pardus*,
   551 U.S. 89 (2007) .............................................................. 31

*Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*,
   2018 COA 92 ...................................................................... 30

*Farmer v. Banco Popular of N. Am.*,
   791 F.3d 1246 (10th Cir. 2015) ........................................ 46, 47, 51

*Freedman v. Town of Fairfield*,
   2006 U.S. Dist. LEXIS 66857 (D. Conn. Sept. 19, 2006) ............... 34

*Gallagher v. Shelton*,
   587 F.3d 1063 (10th Cir. 2009) ............................................ 30-31

*Gallagher v. United States*,
   2017 U.S. Dist. LEXIS 163995 (N.D. Cal. Oct. 3, 2017) ............... 44

*Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*,
   771 F.3d 1230 (10th Cir. 2014) ........................................ 45, 47, 49

*Grizzell v. Hartman Enters.*,
   68 P.3d 551 (Colo. App. 2003) ................................................. 30

*Grossman v. Novell, Inc.*,
    120 F.3d 1112 (10th Cir. 1997) ........................................................ 51

*Hahn v. Rothman*,
    2010 U.S. Dist. LEXIS 149536 (C.D. Cal. Oct. 8, 2010) .............................. 34

*Hately v. Torrenzano*,
    2017 U.S. Dist. LEXIS 80011 (E.D. Va. May 23, 2017) .............................. 40

*Hoofnagle v. Smyth-Wythe Airport Comm'n*,
    2016 U.S. Dist. LEXIS 67723 (W.D. Va. May 24, 2016) ............................. 40

*Hovanec v. Miller*,
    831 F. App'x 683 (5th Cir. 2020) ................................................... 35

*Joe Dickerson & Assocs., L.L.C. v. Dittmar* ,
    34 P.3d 995 (Colo. 2001) ......................................................... 54-55

*Joseph v. Carnes*,
    108 F. Supp. 3d 613 (N.D. Ill. 2015) ................................................ 34

*Kamel v. 5Church, Inc.*,
    2019 U.S. Dist. LEXIS 144287 (W.D.N.C. Aug. 23, 2019) .......................... 40

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) ..................................................... 31

*Konop v. Hawaiian Airlines, Inc.  (In re Hawaiian Airlines, Inc.)*,
    355 B.R. 225 (D. Haw. 2006) .................................................. 13, 34

*Maremont v. Susan Fredman Design Grp., Ltd.*,
    2014 U.S. Dist. LEXIS 26557 (N.D. Ill. Mar. 3, 2014) ...................... 34, 36, 37

*Minter v. Prime Equip. Co.*,
    451 F.3d 1196 (10th Cir. 2006) ..................................................... 47

*Pumpco, Inc., the Concrete Pumping Co. v. Schenker Int'l, Inc.*,
    204 F.R.D. 667 (D. Colo. 2001) .................................................... 45

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, L.L.C.*,
    759 F. Supp. 2d 417 (S.D.N.Y. 2010) ........................................ 34, 37

*Reyher v. State Farm Mut. Auto. Ins. Co.*,
    2012 COA 58 ..................................................................... 30

*Ridge at Red Hawk, L.L.C. v. Schneider*,
    **493 F.3d 1174 (10th Cir. 2007)** ................................................................ 32, 43

*Sartori v. Schrodt*,
    **424 F. Supp. 3d 1121 (N.D. Fla. 2019)** ............................................................ 40

*Scott v. Scott*,
    **2018 COA 25** ........................................................................................ 30

*Shefts v. Petrakis*,
    **931 F. Supp. 2d 916 (C.D. Ill. 2013)** ............................................................ 34, 37

*Sil-Flo, Inc. v. SFHC, Inc.*,
    **917 F.2d 1507 (10th Cir. 1990)** .................................................................... 50

*Sunlust Pictures, L.L.C. v. Doe*,
    **2012 U.S. Dist. LEXIS 125719 (D. Colo. Sept. 5, 2012)** ................................ 44

*Sysco Corp. v. Katz*,
    **2013 U.S. Dist. LEXIS 143147 (N.D. Ill. Oct. 3, 2013)** ............................ 40, 42

*Thornton v. Thornton*,
    **492 F. Supp. 3d 810 (W.D. Ark. 2020)** .................................................. 39-40, 42

*Tool Box, Inc. v. Ogden City Corp.*,
    **419 F.3d 1084 (10th Cir. 2005)** .................................................................... 45

*Triplett v. Leflore County*,
    **712 F.2d 444 (10th Cir. 1983)** ...................................................... 45, 51, 52, 53

*Van Alstyne v. Elec. Scriptorium, Ltd.*,
    **560 F.3d 199 (4th Cir. 2009)** .............................................................. 35, 39, 41

*Van Rees v. Unleaded Software, Inc.*,
    **373 P.3d 603 (Colo. 2016)** ........................................................................ 53

*Vista Mktg., L.L.C. v. Burkett*,
    **812 F.3d 954 (11th Cir. 2016)** .................................................................... 35

*Weldon v. Ramstad-Hvass*,
    **512 F. App'x 783 (10th Cir. 2013)** ................................................................ 55

*Statutes*

5 U.S.C. § 552a(g)(4)(A) ............................................................ 35, 36

18 U.S.C. § 205 ........................................................................... 35

18 U.S.C. § 2701 ...................................................................... 2, 41

18 U.S.C. § 2707 ........................................................................ 33

18 U.S.C. § 2707(a) .................................................................... 32

18 U.S.C. § 2707(b) .................................................................... 41

18 U.S.C. § 2707(c) ................................... 33, 35, 37, 38, 39, 41, 55

18 U.S.C. §§ 2707(a), [he] ........................................................ 41

28 U.S.C. § 15.10 ....................................................................... 51

28 U.S.C. § 1291 .......................................................................... 1

28 U.S.C. § 1331 .......................................................................... 1

28 U.S.C. § 2707(c) .................................................................... 36

42 U.S.C. § 1983 ........................................................................... 1

Colo. Rev. Stat. § 13-17-102 ..................................................... 10

Colo. Rev. Stat. § 13-17-201 ................................................. 27, 30

Colo. Rev. Stat. § 18-4-401(1) ................................................... 53

*Other*

10th Cir. R. 25.5 ......................................................................... 58

Colo. R. Civ. P. 12(b) ................................................................ 30

Fed. R. App. P. 32(a)(5) ............................................................ 57

Fed. R. App. P. 32(a)(6) ............................................................ 57

Fed. R. App. P. 32(a)(7)(B) ....................................................... 57

Fed. R. App. P. 32(f) ................................................................. 57

Fed. R. Civ. P. 9(b) ................................................................... 53

Fed. R. Civ. P. 12(b)(6) ........................................................ 30, 51

Fed. R. Civ. P. 15(a) ........................................ 26, 29, 44, 46, 47, 48

Fed. R. Civ. P. 16(b) .................................................................. 26

Fed. R. Civ. P. 16(b)(4) ........................................................ 45, 47

Fed. R. Civ. P. 41(a)(2) .............................................................. 51

Fed. R. Civ. P. 59(e) ................................................................. 15

## <u>STATEMENT OF PRIOR OR RELATED APPEALS</u>

There are no prior or related appeals.

## JURISDICTIONAL STATEMENT

Pursuant to 28 U.S.C. §§ 1331 and 1343, the United States District Court for the District of Colorado properly exercised jurisdiction over the claims of plaintiff/appellant Bryan Seale ("Seale") because those claims raised a federal question under 42 U.S.C. § 1983.

Seale's claims against defendant Gary Peacock ("Peacock") were later dismissed. [VOL. I, pp. 259-66].[1] Thereafter, the magistrate judge issued an order denying Seale's motion for leave to amend, dismissing the claims against Peacock with prejudice and disposing of all remaining claims on March 11, 2021. [VOL. II, pp. 126-33]. Final judgment entered separately the following day. [VOL. II, pp. 135-36].

Seale filed his notice of appeal on April 12, 2021. [VOL. II, pp. 142-45].

Jurisdiction over this appeal is, therefore, proper pursuant to 28 U.S.C. § 1291.

---

[1]Citations to the Appendix will be to volume and page number. Thus, Volume I, page 9 of the Appendix will be cited as "VOL. I, p. 9."

## ISSUES PRESENTED

1.     Did the magistrate judge err in dismissing Seale's claim under the Stored Communications Act (**18 U.S.C. § 2701** *et seq.*) based upon his (alleged) failure to plausibly plead actual damages, where that statute does not require a plaintiff to plead or prove actual damages to recover statutory damages, punitive damages or attorney fees and where Seale's allegations permitted the reasonable inference that he had suffered actual economic and non-economic damages, including harm to his business and reputation?

2.     Did the magistrate judge abuse her discretion in denying Seale leave to amend his complaint in order to substitute Peacock for the John Doe defendants based upon Seale's (alleged) failure to show good cause to modify the scheduling order, where the latter sought leave to amend before the deadline to substitute parties had expired and where the latter's motion for leave and

(proposed) third amended complaint sufficiently demonstrated good cause to modify the scheduling order's deadline for pleading amendments?

3.    Did the magistrate judge abuse her discretion in dismissing Seale's claims with prejudice, where she did not consider whether the (alleged) defects in Seale's complaint could be cured by amendment and where she made no finding that amendment would otherwise be futile?

<u>**STATEMENT OF THE CASE**</u>

## I.    FACTS.

Seale is a real estate agent. [VOL. I, p. 141, ₱ 7]. Seale uses CTM software in the course of his real estate practice. [VOL. I, p. 141, ₱ 8]. CTM software is an interactive platform that enables Seale -- or anyone else accessing his account -- to view

- current and potential customers, including such customer's, names, addresses, phone numbers, email addresses, birthdays and social security numbers;

4

- emails sent and received by him through CTM;

- the status of his current relationships with customers and potential customers (*i.e.*, whether they are currently working together, previously worked together or will potentially work together in the future);

- complete contract history for each of his clients, including but not limited to cancelled, expired, withdrawn and unaccepted offers as well as deleted contracts; and,

- uploaded client documents, including but not limited to bank account information, mortgage account information, lender relationships, personal settings, account details and payment histories.

  [VOL. I, p. 142, ₱ 9].

Peacock is also a real estate agent and previously worked for Seale in that capacity. [VOL. I, pp. 141-42, ₱₱ 5, 10]. Peacock is the only other person who was aware Seale's CTM account credentials.  [VOL. I, p. 142, ₱ 10].

Peacock and Seale were also once married. [VOL. I, pp. 141-42, ⫏⫏ 5, 7, 10].

A.    *Anonymous Letters to Seale's Acquaintances.*

In November-December 2017, Seale became the victim of a harassment campaign.  More specifically, an unidentified person sent over a dozen anonymous mailings to Seale's acquaintances, which mailings

- referenced Seale's dating and sexual activity as well as his business; and,
- contained explicit photographs of Seale as well as his dating profile from a website.  [VOL. I, pp. 142-43, ⫏⫏ 12-13].

In November 2017, Seale himself also received an anonymous mailing -- similar to the aforementioned November-December 2017 anonymous mailings to his acquaintances -- which also asked, "Do you like breaking up families[?]" and which also warned "[M]y attorney will be getting a *subpoena* to you to testify in my divorce case."  [VOL. I, p. 143, ⫏ 14].

Seale attempted to discover who was responsible for the mailings with help from the Colorado Springs Police Department and United States Postal Inspector, but neither was unable to positively identify the responsible person. [VOL. I, p. 143, ⫏ 15]. Seale also retained a professional investigator who conducted DNA testing on

hairs found within the mailing envelopes in an effort to determine the author's identity. [VOL. I, p. 143, ℙ 15].

### B. Unauthorized Access to Seale's CTM Account.

On or around December 13, 2018, someone other than Seale accessed his CTM account nineteen times without authorization. [VOL. I, p. 142, ℙ 9]. At least one of those instances occurred from an IP address belonging to Liberty Toyota on Woodmen Road in Colorado Springs, a car dealership where Peacock's vehicle was serviced on that same date. [VOL. I, p. 142, ℙ 11].

On or about December 17, 2018, someone other than Seale again accessed the latter's CTM account without authorization. [VOL. I, p. 142, ℙ 9]. On this occasion, Seale's CTM account was accessed from an IP address belonging to Peacock's then-employer. [VOL. I, p. 142, ℙ 11].

### C. The Impact on Seale's Business and Reputation.

The November-December 2017 mailings -- which referred to Seale's business and which were derogatory in nature -- appeared designed to harm Seale's business and reputation. [VOL. I, pp. 143-44, ℙℙ 16-19]. And the act of accessing Seale's CTM account was harmful to his business and reputation. [VOL. I, pp. 143-44, ℙℙ 16-19]. For instance, after the November-December 2017 mailings, four real estate agents who had worked with Seale departed his company. [VOL. I, p. 143, ℙ 16].

Additionally, clients with whom Seale had a business relationship stopped communicating and doing business with him. [VOL. I, p. 143, ⁋ 17]. Seale believed the loss of these clients was due to the November-December 2017 mailings or the wrongful accessing of his CTM account. [VOL. I, p. 143, ⁋ 17]. For instance, after the November-December 2017 mailings, two non-profit agencies which had associated with Seale's business discontinued their associations. [VOL. I, p. 143, ⁋ 18].

With regard to his prayer for relief, Seale requested *inter alia* non-economic damages, punitive damages and attorney fees:

> WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant in an amount to be determined at trial, including: a) special damages; b) non-pecuniary damages including but not necessarily limited to pain and suffering, emotional distress and impairment to reputation; c) treble-damages if appropriate grounds therefor exist; c) attorney's fees and costs if appropriate grounds therefor exist; and d) any other relief as the Court deems to be just and proper under the circumstances.

[VOL. I, p. 155].

## II.    PROCEDURAL HISTORY.

### A.    *Dismissal of Seale's Claims Against Peacock.*

Seale filed a complaint against Peacock and other John Doe defendants in Colorado state court in November 2019. [VOL. I, pp. 11-23].  Peacock responded with a notice of removal. [VOL. I, pp. 8-10]. Following removal, the parties consented to have a United States Magistrate Judge conduct all proceedings in the case.[2]  [VOL. I, pp. 205, 217].

In December 2019, Peacock moved for partial dismissal of Seale's complaint. [VOL. I, pp. 93-101]. Seale subsequently filed an amended complaint [VOL. I, pp. 110-27, 157-73] which, with regard to Peacock, asserted claims sounding in

- civil theft;

- violation of the Stored Communications Act ("SCA"); and,

- invasion of privacy based upon appropriation of Seale's name or likeness.   [VOL. I, pp. 161, ¶¶ 20-24, 171-72, ¶¶ 116-28].

---

[2]Thereafter, the underlying action was assigned to United States Magistrate Judge Tafoya.  [VOL. I, pp. 67, 88, 217].

Peacock responded with another motion to dismiss. [VOL. I, pp. 177-85]. Peacock argued Seale's civil theft claim should be dismissed because the latter had not alleged that Peacock's act of accessing Seale's CTM account deprived him of anything of value or was intended to permanently deprive him of data stored on that account. [VOL. I, pp. 180-81]. Peacock also argued that Seale's invasion of privacy claim should be dismissed because it was supported by "only bald allegations of damages" -- "'mental anguish and/or loss of clients'" -- insufficient to state a claim for relief. [VOL. I, p. 181]. Peacock further argued that the (alleged) lost revenue resulting from accessing of Seale's CTM account was an item of commercial damages not recoverable under an invasion of privacy claim. [VOL. I, p. 182]. Finally, Peacock argued that Seale's SCA claim should be dismissed because

- his allegations did "not plausibly allege actual damage from the access of [his] CTM account" [VOL. I, p. 182]; and because,

- he lacked standing to recover statutory damages under the SCA in that he had not suffered an actual harm from the unauthorized access of his CTM account. [VOL. I, pp. 183-84].

10

Peacock also sought an award of attorney fees pursuant to C.R.S. § 13-17-102. [VOL. I, p. 185].

Seale responded in opposition. [VOL 1, pp. 186-99].

With respect to his civil theft claim, Seale argued that his complaint allegations [VOL I, pp. 157-73] permitted the reasonable inferences that

- Peacock "wrongfully accessed [the former]'s CTM account, thereby obtaining or exercising control over something of value belonging to [Seale];"

- Peacock "used said thing(s) of value intending that such use would deprive [Seale] permanently of its use;" and,

- "[Seale] was damaged by such actions." [VOL. I, p. 190].

With respect to his invasion-of-privacy claim, Seale argued that he had "not simply alleged that [Peacock] accessed his CTM account." [VOL. I, p. 195]. Instead, Seale also alleged "that [Peacock] wrongfully accessed his CTM account not less than twenty times, that said account contains sensitive client information, and that he suffered damages in the form of mental anguish and/or loss of clients due to such access." [VOL. I, p. 195]. Those allegations, argued Seale, permitted the reasonable

inference "that he suffered mental anguish due to [Peacock's] access[] of the CTM account." [VOL. I, p. 196].

Seale further argued that damages for mental anguish were recoverable even if he could not recover commercial damages on his invasion of privacy claim. [VOL. I, pp. 196-97].

With respect to his SCA claim, Seale argued his allegations permitted the reasonable inference he suffered actual damages and an injury in fact because

- both Seale and Peacock are licensed realtors;

- that Peacock previously worked for Seale;

- that the CTM account was accessed *via* an IP address which belongs to Peacock's then current employer, which is a real estate business; and,

- that three clients with whom Seale had a business relationship ceased communicating with and/or doing business with Seale and that, upon information and belief, one or more of those losses was caused by the November-December 2017 mailing and/or Peacock's wrongful and

unauthorized access of Seale's CTM account.

[VOL. I, pp. 191-92].

Seale argued Peacock's standing argument lacked merit because it was based on cases interpreting different statutes including the Fair Credit Reporting Act. [VOL. I, pp. 192-94]. Seale argued the SCA expressly authorized aggrieved persons to recover "actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000." (Emphasis added). [VOL. I, p. 193]. He also specifically argued that actual damages are not required the state a claim under the SCA:

> In interpreting the Stored Communications Act, multiple courts have held that plaintiffs are entitled to recover statutory damages even in the absence of actual damages. For example, the U.S. District Court for the Northern District of California has held that the Court "will follow the seemingly unanimous view of my fellow district courts in this circuit to conclude that actual damages are not necessary for a plaintiff to recover statutory damages under the SCA." ***Cline v. Reetz-Laiolo*, 329 F.Supp.3d**

13

**1000, 1045 (2018)**. Similarly, the United States District Court for the Western Division of Washington has held that: "[t]he Court agrees with the reasoning set forth in *In re Hawaiian Airlines*, *Inc*. and finds that a plaintiff need not prove actual damages or profits and that multiple violations of the SCA may warrant multiplying the $1,000 minimum statutory award by the number of each discrete violation." *Chavan v. Cohen*, **No. C13-01823 RSM, 2015 WL 4077323, at \*4 (W.D. Wash. July 6, 2015)** (**citing *In re Hawaiian Airlines*, *Inc.*, 355 B.R. 225, 230-232 (D. Haw. 2006)**)). [VOL. I, p. 194].

Thus, Seale argued both that statutory damages were recoverable under the SCA without any proof or allegation of actual damages, and that he adequately alleged actual damages. [VOL. I, p. 194].

Peacock's reply in support argued the civil theft claim should be dismissed because Seale's allegations that Peacock accessed and viewed data stored on the former's CTM account were not sufficient to permit the inference of intent to permanently deprive. [VOL. I, pp. 200-01]. Peacock argued that the invasion of privacy claim should be dismissed because Seale's allegation he lost three clients --

14

which he alleged occurred as a result of the November and December 2017 mailings "and/or the wrongful accessing of [Seale's] CTM account" -- were bald allegations insufficient to meet the plausibility pleading standard. [VOL. I, pp. 201-02]. Peacock also argued that Seale's allegations of emotional distress were speculative and inadequate. [VOL. I, p. 202].

With respect to the SCA claim, Peacock argued Seale's allegations were insufficient because the (alleged) loss of clients occurred due to the November-December 2017 mailings "and/or the wrongful accessing of [Seale's] CTM account," and "any damages flowing from one of the two letters are irrelevant to the access of the CTM account on which the [SCA] claim is based." [VOL. I, pp. 202-03]. He further argued that the cases holding actual damages were not necessary to recover statutory damages under the SCA were distinguishable and that Seale's allegations of "intangible harm divorced from any 'concrete and particularized' injury" were insufficient to establish standing. [VOL. I, p. 203].

On August 27, 2020, the magistrate judge dismissed Seale's amended complaint with prejudice. [VOL. I, pp. 259-66]. The magistrate judge dismissed the civil theft claim because she found Seale had not plausibly alleged facts supporting "an inference that [] Peacock intended to *permanently* deprive [Seale] of his property," and that his amended complaint was "devoid of any allegations of []

Peacock's intent." (Emphasis in original). [VOL. I, p. 263]. The magistrate judge dismissed the invasion of privacy claim finding Seale had failed to sufficiently allege actual damages and specifically noting Seale's allegation of mental anguish was "a 'bare assertion' and a '[t]hreadbare recital[]' of an element of the claim which is unsupported and does not suffice at the pleading stage." [VOL. I, p. 264]. The magistrate judge dismissed Seale's SCA claim because he had not plausibly alleged damages from the access of his CTM account; that is to say, she found his allegations were "bare assertions that do not plausibly allege actual damage from the access of Plaintiff's CTM account." [VOL. I, p. 265].

For both the invasion of privacy and SCA claims, the magistrate judge noted that damages flowing from the November-December 2017 mailings were irrelevant to whether Seale suffered damages from the accessing of his CTM account. [VOL. I, pp. 264-65].

     *B.    Seale's Motions to Amend the Judgment and Complaint.*

Seale thereafter moved to amend the judgment pursuant to Fed. R. Civ. P. 59(e). [VOL. I, pp. 274-77]. He argued the magistrate judge should not have dismissed his claims against Peacock with prejudice because she made no findings that amending the complaint would be futile. [VOL. I, p. 275]. Seale argued an amendment would cure the (alleged) deficiencies by:

16

a) plausibly alleging facts that would allow the court to draw a reasonable inference that [] Peacock intended to permanently deprive [him] of his property when he accessed [his] CTM account; b) providing specific allegations as to the actual clients and business relationships that were lost; c) including factual allegations that clarify that the timing of the wrongful access to [his] CTM account does not preclude such losses from being caused by that access d) specifically alleging how access to the CTM account caused [him] mental anguish; and e) plausibly alleging specific damages arising from the wrongful accessing of [his] CTM account. [VOL. I, pp. 275-76].

Seale contemporaneously filed a motion to amend his complaint ("First Motion to Amend Complaint"), along with a (proposed) second amended complaint. [VOL. I, pp. 278-81, 282-07]. The (proposed) second amended complaint provided details concerning the employees and clients Seale claimed to have lost due to the mailings and unauthorized access of his CTM account. [VOL. I, pp. 285-88, ¶¶ 13-33]. More specifically,

- Seale's client, Tim Cobb, sold his house on February 20, 2018 -- using a different real estate agent -- to the same buyer Seale had shown the house to earlier;

- Seale's client, Dave Karlene, sold his house on February 26, 2018 using another real estate agent;

- Seale's client Lynn Kilbourn sold her home on July 18, 2018 -- using a different real estate agent -- to the same buyer Seale had shown her home to earlier;

- Lynn Kilbourn bought a home on July 19, 2018 – using a different real estate agent -- from a seller with whom Seale had previously negotiated on her behalf;

- Seale's client, Jessica Paul, closed on the sale of property on August 17, 2018 using Peacock and his new brokerage as her agent;

- Seale's clients, James and Suzy Hough, sold their home on December 19, 2018 using a different real

18

estate agent. [VOL. I, pp. 285-86, 288, ¶¶ 13-14,

19-21, 31].

Although Seale confirmed his CTM account had been accessed in December 2018,

he also alleged that he believed that account was also accessed "substantially earlier

in the year," and that he was attempting to obtain information about such prior

unauthorized access. [VOL. I, p. 288, ¶ 29]. In total, Seale alleged he lost

commissions totaling approximately $60,045 due to the loss of clients [VOL. I, pp.

288-89, ¶ 32-33] as well as a gross business revenue decline of approximately

$82,055 as a result of the loss of clients and employees. [VOL. I, p. 289, ¶ 36].

Seale's (proposed) second amended complaint also provided additional

factual allegations regarding his non-economic damages:

Plaintiff has suffered noted psychological and mental

health harm due to the letters and CTM hacking.

Specifically, as identified by Dr. Jackie Grimmett,

Plaintiff has suffered from non-psychotic paranoia,

increased anxiety, increased depressive periods, and

lower motivation. Dr. Grimmett reports that Plaintiff is

still preoccupied and mistrustful of others and that he had

likely experienced a disturbing traumatic event that

continues to cause distress and ongoing anxiety

episodes. Dr. Grimmett reports that after Plaintiff learned

of someone breaking into is business account that he had

increased anxiety. Dr. Grimmett further stated in her

report that "there is significant support that the events

underlying his legal complaint have dominated his

thinking and his emotional experience since they

transpired." [VOL. I, p. 289, ⁋ 35].

The (proposed) second amended complaint also added additional factual details to

Seale's various claims for relief.   [VOL. I, pp. 289-306, ⁋⁋ 37-144]. More

specifically, Seale alleged Peacock's violation of the SCA caused economic harms

from the loss of clients, employees and business partners as well as non-economic

and mental health injuries.  [VOL. I, p. 306, ⁋⁋ 144-45].

Within his response in opposition, Peacock argued the magistrate judge

should deny Seale's motion to amend the judgment because final judgment had not

yet entered final judgment due to the outstanding claims against the John Doe

defendants. [VOL. II, p. 10]. Peacock also argued that the magistrate judge should

deny Seale's motion to amend the judgment because Seale had not demonstrated

grounds existed to "submit additional evidence" and because amendment would be futile. [VOL. II, pp. 10-14]. Peacock argued Seale's (proposed) amendment still "failed to plausibly allege damages attributed to the access of the [CTM] account." [VOL. II, p. 14].

Seale replied in support of his motion, arguing *inter alia* that amendment was not futile because the (proposed) amendment allegations permitted the inference that Peacock used data from Seale's CTM account to divert clients from Seale's business, and that he intended to permanently deprive Seale of the benefit of the information in the CTM account. [VOL. II, pp. 25-26]. Likewise, Seale argued the (proposed) amendment stated a claim for invasion of privacy because the allegations therein permitted the reasonable inference he suffered damages -- including mental anguish -- as a result of Peacock unauthorized access of his CTM account. [VOL. II, pp. 26-27]. With regard to his SCA claim, Seale argued that the (proposed) amendment stated a claim for relief because

- the allegations therein permitted the reasonable inference that Peacock's unauthorized access of Seale's CTM account caused him damage; and because,

- he was entitled to statutory damages under the SCA whether or not he suffered actual damages because that statute "reflects a clear legislative intent to ensure that one cannot escape liability for violating that Act simply because nobody was 'harmed' by such violation." [VOL. II, p. 28].

C.    *Seale's Attempt to Substitute Peacock for John Doe Defendants.*

Beginning on February 3, 2020, Seale sought additional time to identify and serve the John Doe defendants. [VOL. I, pp. 218-22]. In support of his unopposed motion, Seale noted his prior efforts to determine the identity of the person or persons responsible for the November-December 2017 mailings by making reports to, and meeting with, the Colorado Springs Police Department, communicating with the United States Postal Inspector, retaining a private investigator as well as retaining a forensic investigator to conduct a fingerprint analysis and DNA testing. [VOL. I, pp. 220-21]. Despite these efforts, Seale had been unable to determine who was responsible and sought an extension through April 30, 2020 to identify the John Doe defendants and complete service. [VOL. I, p. 221]. The magistrate judge granted Seale's motion, and, at the scheduling conference, it set a deadline of March 12, 2020 for pleading amendments. [VOL. I, pp. 229, 237].

On April 27, 2020, Seale sought a second extension of time to identify and serve the John Doe defendants. [VOL. I, pp. 242-47]. In support of this request, Seale argued that, in part due to the COVID-19 pandemic, he had not yet received the results of some of the forensic testing on the mailings. [VOL. I, p. 245]. Seale requested an extension through and including July 31, 2020 in which to identify and serve the John Doe defendants.  [VOL. I, p. 246].

On July 30, 2020, Seale requested a third extension of time to identify and serve the John Doe defendants. [VOL. I, pp. 251-56]. This motion indicated Seale's hope to receive the results of certain testing by July 31, 2020, but the delay in obtaining results was longer than anticipated. [VOL. I, p. 254]. Seale requested an extension until October 31, 2020 to identify and serve the John Doe defendants. [VOL. I, p. 255]. That request was also granted. [VOL. I, p. 257].

On October 30, 2020, Seale filed a fourth motion for extension of time to identify the unidentified defendants and complete service. [VOL. II, pp. 30-35]. Seale argued he had learned on October 26, 2020 that the DNA testing had been completed but had not received a copy of the results. [VOL. II, p. 33]. He expected to review the results in the next two weeks, after which he anticipated being able to amend the complaint and substitute responsible persons for the John Doe defendants. [VOL. II, p. 33]. Seale sought an extension through December 31, 2020 in which to

identify the John Doe defendants and complete service. [VOL. II, p. 34]. That motion was also granted. However, Seals was only provided an extension of time through November 30, 2020, after which the John Doe defendants would be dismissed if not served. [VOL. II, p. 36].

On November 23, 2020 -- a week prior to the then-current deadline -- Seale moved to amend his complaint to substitute Peacock for the John Doe defendants ("Second Motion to Amend the Complaint"). [VOL. II, pp. 37-39]. Seale argued he "recently obtained additional factual information which, together with information previously obtained, forms the basis for naming an individual defendant in place of the unknown defendant(s)." [VOL. II, p. 38]. Seale also filed a (proposed) third amended complaint, which substituted Peacock for the John Doe defendants. [VOL. II, pp. 57-77].

The (proposed) third amended complaint alleged Seale recently reviewed photographs on his computer, including a photograph of Seale's tablet containing "a view of [his] profile from the Manhunt website, which profile included a depiction of the explicit photograph that was included" in the November-December 2017 mailings. [VOL. II, p. 59, ¶¶ 12-14]. Seale alleged the photograph contained a reflective image which appeared to show that Peacock's phone was used to take the photograph of his profile. [VOL. II, pp. 59-60, ¶¶ 14-15]. Seale alleged that Peacock

24

showed him a copy of the explicit photograph used in the November-December 2017 mailings during a therapy session.  [VOL. II, p. 60, ⁋ 16].  Based upon these facts, Seale alleged Peacock possessed the explicit photograph used in the November-December 2017 mailings.  [VOL. II, p. 60, ⁋⁋ 16-17].  The (proposed) third amended complaint asserted claims against Peacock for

- intentional infliction of emotional distress;

- invasion of privacy based on intrusion into seclusion;

- invasion of privacy based on public disclosure of private facts; and,

- defamation.[3]  [VOL. II, pp. 64-76, ⁋⁋ 42-121].

The (proposed) third amended complaint included several exhibits supporting the new allegations.  [VOL. II, pp. 78-104].

Peacock responded in opposition, arguing Seale had not plausibly alleged that Peacock was "John Doe," and that that claims in the (proposed) third amended complaint were barred by the statute of limitations.  [VOL. II, pp. 112-14].

---

[3]These were the same claims asserted against the John Doe defendants in Seale's amended complaint, except the (proposed) third amended complaint contained two fewer defamation claims.  [Compare VOL. I, pp. 162-171, ⁋⁋ 25-115 with VOL. II, pp. 64-76, ⁋⁋ 42-121].

Within his reply in support, Seale argued the information recently discovered was sufficient to substitute Peacock because the former had verified "Peacock's presence at the Toyota dealership on a day at which the CTM account was accessed from that location using the same password that would be used to access the Manhunt account" and because a reflection captured in a photograph showed "Peacock taking a picture of the very photograph sent in the anonymous mailings" which, together, permitted the inference that Peacock was John Doe. [VOL. II, pp. 117-18]. Seale further argued that the claims were not time barred because Peacock attempted to conceal his responsibility for the November-December 2017 mailings. [VOL. II, pp. 119-21]

On March 10, 2021, the magistrate judge denied Seale's motion to amend the judgment as premature. [VOL. II, p. 124]. The magistrate judge also denied Seale's First Motion to Amend the Complaint as moot because he subsequently filed a Second Motion to Amend the Complaint. [VOL. II, p. 123].

On March 11, 2021, the magistrate judge denied Seale's Second Motion to Amend the Complaint. [VOL. II, p. 126-33]. Though that motion had been filed before the extended November 30, 2020 deadline, the magistrate judge applied the standard applicable to motions to amend filed after the pleading amendment deadline, which standard requires a party to show both good cause to amend the

scheduling order pursuant to Fed. R. Civ. P. 16(b), and that leave to amend is also justified under Fed. R. Civ. P. 15(a). [VOL. II, pp. 127-28]. The magistrate judge found that Seale failed to demonstrate good cause because he failed to demonstrate diligent efforts in discovering the "'recently obtained information' … especially where the photographs were in his possession since the inception of the case." [VOL. II, p. 130]. The magistrate further found that Seale had waited for several months after receiving the expert witness report and other documents to amend his complaint to clarify the previously-dismissed claims against Peacock. [VOL. II, p. 131]. The magistrate judge's order further stated that she was dismissing the claims against Peacock with prejudice, dismissing the claims against the John Doe defendants without prejudice and entering judgment in favor of Peacock. [VOL. II, p. 132].

On March 12, 2021, final judgment was entered in favor of Peacock and against Seale. [VOL. II, pp. 135-36].

On April 12, 2021, Seale filed his notice of appeal. [VOL. II, pp. 142-43].

Subsequently, Peacock was awarded $23,643.75 in attorney fees pursuant to C.R.S. § 13-17-201. [VOL. II, pp. 197-99].

## SUMMARY OF THE ARGUMENT

The underlying judgment should be reverse for several reasons.

First, the magistrate judge erred in finding that Seale was required to allege actual damages to state a claim for relief under the SCA and, in turn, in dismissing Seale's SCA claim based on his (alleged) failure to plead such damages.

Whether actual damages are required to recover statutory damages under the SCA is a question of first impression in the Tenth Circuit. That question should be resolved by declaring that the SCA permits a plaintiff to recover statutory damages, punitive damages and attorney fees without proving actual damages and, by necessary extension, that the magistrate judge erred in dismissing Seale's SCA claim based upon his (alleged) failure to plead actual damages. Indeed, federal courts have unanimously held that the SCA permits a successful plaintiff to recover statutory damages, punitive damages and attorney fees absent actual damages. Because Seale's complaint asserted that he was entitled to punitive damages and attorney fees under the SCA [VOL. I, p. 172], the magistrate judge erred in dismissing his SCA claim.

Relatedly, judgment against Seale should be reversed because Seale's allegations were sufficient to permit the reasonable inference that Peacock's unauthorized act of accessing Seale's CTM account caused Seale actual damages,

28

including loss of clients and employees, non-economic damages as well as damage to his reputation.

Second, the judgment against Seale should be reversed because the magistrate judge applied the wrong legal standard in denying the former's Second Motion to Amend.  In denying that motion, the magistrate judge utilized the legal standard applicable to motions to amend filed after a pleading amendment deadline has expired and, in applying that standard, found that Seale failed to show "good cause" for amending the scheduling order.  The magistrate judge erred in denying Seale's Second Motion to Amend based upon this standard because

- she had previously extended the deadline for substituting the John Doe defendants until November 30, 2020; and because,

- Seale filed his Second Motion to Amend before that deadline expired.

Moreover, to the extent the magistrate judge properly required Seale to show "good cause," Seale's Second Motion to Amend and (proposed) third amended complaint established that the timing of that motion was the product of inadvertence, oversight and excusable neglect constituting "good cause."  Alternatively, this matter should

be remanded for consideration of Seale's Second Motion to Amend under Fed. R. Civ. P. 15(a).

Third, the magistrate judge abused her discretion because she applied the incorrect legal standard in dismissing Seale's claims against Peacock with prejudice. A dismissal with prejudice is only appropriate when a district court determines that leave to amend would be futile. Nonetheless, the magistrate judge dismissed Seale's claims against Peacock with prejudice without ever considering Seale's ability to cure the (alleged) pleading defects with an amendment or whether amendment would be futile. Because Seale's (proposed) second amended complaint demonstrates that the (alleged) defects that formed the basis for the magistrate judge's dismissal order could be cured, the dismissal of Seale's claims against Peacock should be reverse, and this matter remanded with instructions to permit Seale to amend his complaint. Alternatively, this matter should be remanded for further proceedings, including a determination of whether Seale should be granted leave to amend in order to cure the (alleged) pleading defects in his complaint; that is, those (alleged) pleading defects that provided the basis for the dismissal of Seale's civil theft, invasion of privacy and SCA claims.[4]

---

[4]To the extent the underlying judgment is reversed or otherwise vacated, so, too, must Peacock's award of attorney fees pursuant to C.R.S. § 13-17-201 be reversed and vacated. *E.g.*, *Grizzell v. Hartman Enterprises*, **68 P.3d 551, 555**

## ARGUMENT

## I.    THE MAGISTRATE JUDGE ERRED IN DISMISSING SEALE'S SCA CLAIM.

### A.    *Standard of Review.*

A Rule 12(b)(6) dismissal is reviewed *de novo*. **Bixler v. Foster, 596 F.3d 751, 756 (10th Cir. 2010)**. In doing so, a circuit court considers whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" **Id**. (**quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)**). A circuit court assumes "the factual allegations are true and ask[s] whether it is plausible that the plaintiff is entitled to relief." **Id**. (**quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009)**). It must also construe well-pleaded complaint allegations "in the light most favorable to the plaintiff." **Albers v. Board of County Comm'rs, 771 F.3d 697, 700 (10th Cir. 2014)** (**quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)**). However, a circuit court is not

---

**(Colo. App. 2003)**; *Scott v. Scott*, **2018 COA 25, P61, 428 P.3d 626, 639 (Colo. App. 2018)**; *Reyher v. State Farm Mutual Automobile Insurance Co.*, **2012 COA 58, P32**; **see** *Falcon Broadband, Inc. v. Banning Lewis Ranch Metropolitan District No. 1*, **2018 COA 92, P59** (C.R.S. § 13-17-201 does not apply "'if an action contains both tort and non-tort claims and the defendant obtains C.R.C.P 12(b) dismissal of only the tort claims'") (**quoting *Dubray v. Intertribal Bison Cooperative*, 192 P.3d 604, 607 (Colo. App. 2008)**).

required to accept the truth of legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Bixler*, **596 F.3d at 756** (**quoting *Iqbal*, 556 U.S. at 678**).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, **556 U.S. at 677**. A complaint "does not need detailed factual allegations;" instead, the factual allegations must simply "be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, **555 F.3d 1188, 1191 (10th Cir. 2009)** (**quoting *Twombly*, 550 U.S. at 555**). Indeed, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests'" (*Khalik v. United Air Lines*, **671 F.3d 1188, 1192 (10th Cir. 2012)** (**quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)**)) and, with respect to the court, "reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, **493 F.3d 1174, 1177 (10th Cir. 2007)**.

> B.    *Seale's SCA Claim was Improperly Dismissed for Failure to Plead Actual Damages.*

The Magistrate Judge dismissed Seale's SCA claim because she found Seale failed to plead facts establishing actual damages. [VOL. I, p. 265].

That dismissal, however, was improper because Seale was not required to plead actual damages to state a claim for violation of the SCA.

        1.    <u>Relief Under the SCA Does not Require Actual Damages.</u>

The SCA provides a private right of action, entitling a "person aggrieved by any violation of this chapter … in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind" to "recover from the person or entity … which engaged in that violation such relief as may be appropriate." **18 U.S.C. § 2707(a)**.  "[S]uch relief" includes The SCA specifically authorizes recovery of the following relief:

> **(1)**    [] preliminary and other equitable or declaratory relief as may be appropriate;
> **(2)**    damages under subsection (c); and,
> **(3)**    a reasonable attorney's fee and other litigation costs reasonably incurred.  **18 U.S.C. § 2707(a)**.

And with respect to "damages," the SCA also authorizes recovery of actual damages, disgorgement of a violator's profits, statutory damages and, where appropriate and proven, punitive damages:

> **(c)**    **Damages.**    The court may assess as
>
> damages in a civil action under this section the sum of
>
> the actual damages suffered by the plaintiff and any
>
> profits made by the violator as a result of the violation,

but in no case shall a person entitled to recover receive

less than the sum of $1,000. If the violation is willful or

intentional, the court may assess punitive damages. In the

case of a successful action to enforce liability under this

section, the court may assess the costs of the action,

together with reasonable attorney fees determined by the

court.  **18 U.S.C. § 2707(c)**.

Many federal district courts interpreting 18 U.S.C. § 2707 have held a plaintiff need not suffer actual damages to recover statutory damages under the SCA. ***Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1045-46 (N.D. Cal. 2018)** (following "the seemingly unanimous view of my fellow district courts in this circuit" and concluding "actual damages are not necessary for a plaintiff to recover statutory damages under the SCA"); ***Aguiar v. MySpace LLC*, 2017 U.S. Dist. LEXIS 165463, \*25-26 (C.D. Cal.)** ("a party 'aggrieved by a violation of the Act could obtain the minimum statutory award without proving actual damages'"); ***Brooks Group & Associates. v. LeVigne*, 2014 U.S. Dist. LEXIS 52479, \*38 (E.D. Pa.)** (characterizing this interpretation as "in line with the clear weight of authority"); ***Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp*, LLC, 759 F. Supp. 2d 417, 428 (S.D.N.Y. 2010)** ("Defendants need not allege actual damages" and are

34

"entitled to the statutory minimum of $1,000 per violation of the statute, whether or not they have suffered actual damages."); *see also Chavan v. Cohen*, **2015 U.S. Dist. LEXIS 87351, \*10 (W.D. Wash.)**; *Joseph v. Carnes*, **108 F. Supp. 3d 613, 618 (N.D. Ill. 2015)**; *Maremont v. Susan Fredman Design Group*, *Ltd.*, **2014 U.S. Dist. LEXIS 26557, \*23-24 (N.D. Ill.)**; *Shefts v. Petrakis*, **931 F. Supp. 2d 916, 919 (C.D. Ill. 2013)**; *Chadha v. Chopra*, **2012 U.S. Dist. LEXIS 172219, \*9-11 n.3 (N.D. Ill.)**; *Hahn v. Rothman*, **2010 U.S. Dist. LEXIS 149536, \*12-13 (C.D. Cal.)**; *Cardinal Health 414, Inc. v. Adams*, **582 F. Supp. 2d 967, 975-976 (M.D. Tenn. 2008)**; *Freedman v. Town of Fairfield*, **2006 U.S. Dist. LEXIS 66857, \*9 (D. Conn.)**; *Konop v. Hawaiian Airlines, Inc.*, **355 B.R. 225, 230 (D. Haw. 2006)**; *Cedar Hill Associates v. Paget*, **2005 U.S. Dist. LEXIS 32533, \*7 (N.D. Ill.)**.

Three federal circuits, however, have taken a different approach. Those courts have held that actual damages are a prerequisite to recovery of statutory damages under the SCA. *Hovanec v. Miller*, **831 Fed. Appx. 683, 685 (5th Cir. 2020)**; *Vista Marketing, LLC v. Burkett*, **812 F.3d 954, 965-75 (11th Cir. 2016)**; *Van Alstyne v. Electronic Scriptorium*, *Ltd.*, **560 F.3d 199, 205 (4th Cir. 2009)**. These cases rely heavily on the United States Supreme Court's interpretation of the Privacy Act in *Doe v. Chao*, **540 U.S. 614 (2004***). **See**, *e.g.*, *Van Alstyne*, **560 F.3d at 204-06**. *Van Alstyne*, for example, noted that 18 U.S.C. § 2707(c) used language similar to

35

that in the Privacy Act, which provided that if the United States willfully or intentionally violated its provisions, "it would be liable for 'actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $ 1,000.'"  *Id***. at 205** (**quoting 5 U.S.C. § 552a(g)(4)(A)**).  It noted that, in *Doe*, the Supreme Court had interpreted this language to mean

> that by using the phrase "actual damages sustained," Congress "made specific provision … for what a victim within the limited class may recover" … .  And, the "simplest reading" of the clause "a person entitled to recovery, … looks back to the immediately preceding provision for recovering actual damages." *Id***.** (**quoting *Doe***, 540 U.S. at 620**).

Thus, it explained the Court in *Doe* "concluded that statutory damages were available only to plaintiffs who first proved that they suffered actual damages." *Id***.** (**quoting *Doe***, 540 U.S. at 627**).  Because the SCA used similar language, the Fourth Circuit concluded that "just as the Privacy Act required proof of 'actual damages' as a prerequisite to recovering statutory damages, so does the SCA." *Id***. at 205-06**.

36

But the approach taken by the Fourth, Fifth and Eleventh Circuits, and their reliance on *Doe*, has been strongly criticized.  In *Maremont*, for instance, the United Stated District Court for the Northern District of Illinois noted:

> Unlike the Privacy Act damages provision, which includes restrictive language that "seems to dictate actual damages as the only remedy in that clause," § 2707(c) uses permissive language—that the Court "may assess as damages" actual damages and profits—which "seems to offer [the actual damages] formula as one means of calculation" but not to the exclusion of statutory damages. **2014 U.S. Dist. LEXIS 26557 at \*23** (**quoting *Shefts*, 931 F. Supp. 2d at 918**); ***Pure Power Boot Camp, Inc.*, 759 F. Supp. 2d at 427** ("as recognized by the majority of federal courts to have examined this issue subsequent to the *Doe* decision, the Privacy Act and the SCA are different statutes, with different purposes, and they penalize different behavior").

Indeed, in her dissenting opinion in ***Doe***, Justice Ginsburg recognized that 18 U.S.C.
§ 2707(c) has "been understood to permit recovery of the $1,000 statutory minimum
despite the absence of proven actual damages." ***Doe*, 540 U.S. at 640**.

Furthermore, those courts holding that actual damages are not required to
recover statutory damages under the SCA have determined that the legislative
history underlying the SCA is distinct from that underlying the Privacy Act, which
was intended "to exclude statutory damages without actual damages[.]" ***Maremont*,
2014 U.S. Dist. LEXIS 26557 at \*24** (**citing *Doe*, 540 U.S. at 622-23**).   More
specifically, "the SCA's legislative history 'underscores that the damage that the
[SCA] seeks to prevent is an invasion of privacy, not merely instances where a
transgressor capitalizes on such an invasion[.]'"    ***Id.*** (**quoting *Cedar Hills
Associates*, *Inc.*, 2005 U.S. Dist. LEXIS 32533 at \*10**); ***Pure Power Boot Camp,
Inc.*, 759 F. Supp. 2d at 428** (noting legislative history underlying 18 U.S.C. §
2707(c) makes "it clear that Congress intended that damages under Section 2707(c)
be at least $1,000 per violation").

The Tenth Circuit has not yet decided whether actual damages are a
prerequisite to the recovery of statutory damages under the SCA.   Nonetheless, by
dismissing Seale's SCA claim based on his (alleged) failure to plead actual damages,
the magistrate judge effectively sided with the Fourth, Fifth and Eleventh Circuits

38

that actual damages are required to state such a claim.  [VOL. I, p. 265].  In doing so, however, the magistrate judge did not consider whether the SCA's statutory language or legislative intent required actual damages to state a claim for relief. [VOL. I, p. 265] and, in so doing, the magistrate judge reached a legal conclusion regarding the requirements of a claim for relief under the SCA that was erroneous and inconsistent with the SCA's statutory language and legislative intent.

The approach taken by the overwhelming majority of courts that have considered this issue -- that the SCA does not require a plaintiff to plead actual damages to state a claim for relief because statutory damages are recoverable under the SCA regardless of whether the plaintiff suffered actual damages -- should be followed here because the permissive language of the SCA providing that "[t]he court *may* assess as damages … the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, *but in no case shall a person entitled to recover receive less than the sum of $1,000*" ((emphasis added) (**18 U.S.C. § 2707(c)**)) as well as the SCA's structure and legislative history, clearly authorize recovery of statutory damages without actual damages.

The magistrate judge's dismissal of Seale's SCA claim -- based on his (alleged) failure to plead actual damages – should, therefore, be reversed, and this matter remanded for further proceedings.

        2.        <u>Seale's Allegations He was Entitled to Punitive Damages and Attorney Fees were Sufficient to State a SCA Claim.</u>

The dismissal of Seale's SCA claim should also be reversed because, even if actual damages are a prerequisite to recovery of statutory damages under the SCA, "[t]he federal courts are in agreement that a party can recover punitive damages and attorneys' fees even without proving actual damages." ***Chadha*, 2012 U.S. Dist. LEXIS 172219 at \*10-11 (citing *Van Alstyne*, 560 F.3d at 209); see *Thornton v. Thornton*, 492 F. Supp. 3d 810, 817-818 (W.D. Ark. 2020)** (even if failure to plead actual damages would prevent a plaintiff from recovering statutory damages under the SCA, the plaintiff "may still be entitled to equitable relief, reasonable attorney's fees and costs, and punitive damages for a willful violation."); ***Sartori v. Schrodt*, 424 F. Supp. 3d 1121, 1131 (N.D. Fla. 2019)**; ***Kamel v. 5Church, Inc.*, 2019 U.S. Dist. LEXIS 144287, \*44-45 (W.D. N.C.)** (denying summary judgment on SCA claim because "proof of actual damages is not required to recover attorney's fees under the SCA"); ***Hately v. Torrenzano*, 2017 U.S. Dist. LEXIS 80011, \*26 (E.D. Va.)** ("proof of actual damages is not required before an award of either punitive

damages or attorney's fees."); *Hoofnagle v. Smyth-Wythe Airport Comm'n*, **2016 U.S. Dist. LEXIS 67723, \*33-34 (W.D. Va.)** ("Hoofnagle may be entitled to recover punitive damages and attorney's fees without proof of actual damages."); *Sysco Corp. v. Katz*, **2013 U.S. Dist. LEXIS 143147, \*11-12 (N.D. Ill.)** ("because Plaintiffs seek punitive damages and attorney's fees, which can be recovered absent proving actual damages, the SCA count survives").

In other words, even the jurisdictions that hold actual damages are a prerequisite to statutory damages recognize that a party can recover punitive damages or attorney fees under the SCA without pleading or proving actual damages. **See,** *e.g., Sartori*, **424 F. Supp. 3d at 1131**; *Kamel*, **2019 U.S. Dist. LEXIS 144287 at \*44-45**; *Hately*, **2017 U.S. Dist. LEXIS 80011 at \*26**; *Hoofnagle*, **2016 U.S. Dist. LEXIS 67723 at \*33-34**. Indeed, even the Fourth Circuit in *Van Alstyne* found "no error in the district court's award of punitive damages absent a showing of actual damages." **560 F.3d at 209**.

Here, Seale's claim under the SCA alleged that

> [he] is a subscriber or other person aggrieved by []
>
> Peacock's violation of 18 U.S.C. § 2701, which violation
>
> was engaged in with a knowing and intentional state of
>
> mind by [] Peacock. Therefore, pursuant to 18 U.S.C. §

2707(a), [he] is entitled to recover from [] Peacock the

relief provided for in 18 U.S.C. § 2707(b) and § 2707(c).

[VOL. I, p. 171, ℙ 123].

18 U.S.C. § 2707(c) provides that if a violation of the SCA "is willful or

intentional, the court may assess punitive damages" and "[i]n the case of a successful

action to enforce liability under this section, the court may assess the costs of the

action, together with reasonable attorney fees determined by the court." Seale's

complaint also specifically requested an award of punitive damages and attorney

fees:

> WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendant in an amount to be determined at trial, including: a) special damages; b) non-pecuniary damages including but not necessarily limited to pain and suffering, emotional distress and impairment to reputation; c) treble-damages if appropriate grounds therefor exist; c) attorney's fees and costs if appropriate grounds therefor exist; and d) any other relief as the Court deems to be just and proper under the circumstances.

[VOL. I, p. 172].

Because actual damages are not required to recover punitive damages or

attorney fees under the SCA and because Seale alleged he was entitled to both of

those forms of relief, the magistrate judge erred in dismissing his SCA claim based

upon his (alleged) failure to plead actual damages. ***Thornton*, 492 F. Supp. 3d at**

42

**818** (failure to plead actual damages did not merit dismissal of SCA claim because, even absent actual damages, plaintiff could still recover equitable relief, attorney fees and punitive damages); *Sysco Corp.*, **2013 U.S. Dist. LEXIS 143147 at \*11** (denying motion to dismiss SCA claim for lack of actual damages because plaintiffs sought "punitive damages and attorney's fees, which can be recovered absent proving actual damages"); *Chadha*, **2012 U.S. Dist. LEXIS 172219 at \*10** (same).

The magistrate judge's dismissal of Seale's SCA claim should, therefore, be reversed, and this matter remanded for further proceedings.

C.    *Seale's Factual Allegations were Sufficient to Establish that He Suffered Actual Damages.*

The magistrate judge also erred in dismissing Seale's SCA claim because, even if actual damages were required to state a claim under the SCA, Seale's allegations established such damages.

Here, Seale alleged that Peacock's wrongful accessing of his CTM account resulted in the loss of three clients, was harmful to his business, and was "designed to negatively impact his reputation and/or his business." [VOL. I, pp. 160-61, ¶¶ 17, 19]. Seale sought special damages and non-economic damages including damages for "pain and suffering, emotional distress and impairment to reputation[.]" [VOL. I, p. 172]. These allegations were sufficient to state a claim because they permitted the inference Peacock's accessing of Seale's CTM account caused Seale to lose

43

business, interfered with confidential client relationships, and harmed his reputation. *Iqbal*, **556 U.S. at 677**.  These allegations raised Seale's "right to relief above the speculative level" (*Christy Sports, LLC*, **555 F.3d at 1191**) and gave "the court reason to believe that [Seale had] a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C.*, **493 F.3d at 1177**.

Other courts have found similar allegations sufficient to state a claim for relief under the SCA.  **See** *Chadha*, **2012 U.S. Dist. LEXIS 172219 at \*11-12** (holding complaint set forth plausible basis for actual damages where it alleged plaintiffs suffered "actual damages to their reputations"); *Gallagher v. United States*, **2017 U.S. Dist. LEXIS 163995, \*33 (N.D. Cal.)** (allegation that unlawful surveillance scheme chilled plaintiffs first amendment activity was sufficient to establish actual damages under SCA); *Cornerstone Consultants, Inc. v. Product Input Solutions, L.L.C.*, **789 F. Supp. 2d 1029, 1055-56 (N.D. Iowa 2011)** (allegations sufficient even though complaint did not specifically allege what harms were suffered where they permitted the inference the plaintiffs suffered an impediment to settlement and loss of attorney-client confidentiality).

Because the magistrate judge erred in finding Seale failed to plead actual damages, the dismissal of his SCA claim should be reversed, and this matter remanded or further proceedings.

## II.  THE MAGISTRATE JUDGE ABUSED HER DISCRETION IN DENYING SEALE'S MOTION TO AMEND TO SUBSTITUTE PEACOCK FOR JOHN DOE DEFENDANTS.

### A.  *Standard of Review.*

A motion to amend to substitute a named party for a John Doe defendant is governed by Fed. R. Civ. P. 15(a).  **See** *Sunlust Pictures***, *LLC v. Doe*, 2012 U.S. Dist. LEXIS 125719, \*1 (Colo.)**.  Under Fed. R. Civ. P. 15(a) "[t]he court should freely give leave [to amend] when justice so requires."  **Fed. R. Civ. P. 15(a)**.  "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  *Triplett v. Leflore County***, 712 F.2d 444, 446 (10th Cir. 1983)** (**quoting** *Conley v. Gibson***, 355 U.S. 41, 48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)**).

Modification of a scheduling order requires a showing of good cause.  **Fed. R. Civ. P. 16(b)(4)**; *Gorsuch, Ltd., B.C. v. Wells Fargo National Bank Ass'n***, 771 F.3d 1230, 1240 (10th Cir. 2014)**.  To establish good cause, a movant must "show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'"  *Gorsuch, Ltd., B.C.***, 771 F.3d at 1240** (**quoting** *Pumpco, Inc. v. Schenker International, Inc.***, 204 F.R.D. 667, 668 (D. Colo. 2001)**).  A plaintiff may

demonstrate good cause if he or she "learns new information through discovery or if the underlying law has changed." ***Id.***

A circuit court reviews "a district court's denial of a motion to amend for abuse of discretion." ***Albers v. Board of County Comm'rs*, 771 F.3d 697, 700-01 (10th Cir. 2014)** (**quoting *Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1086-87 (10th Cir. 2005)**)).  Likewise, a court's refusal to modify a scheduling order is reviewed for abuse of discretion. ***Gorsuch, Ltd., B.C.*, 771 F.3d at 1240**.  "A district court abuses its discretion when it (1) fails to exercise meaningful discretion, such as acting arbitrarily or not at all, (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relies on clearly erroneous factual findings." ***Farmer v. Banco Popular of North America*, 791 F.3d 1246, 1256 (10th Cir. 2015)**.

> B.    *The Magistrate Judge Applied the Incorrect Legal Standard in Denying Seale's Second Motion to Amend the Complaint.*

The magistrate judge abused her discretion in denying Seale's Second Motion to Amend the Complaint, which sought to substitute Peacock for the unidentified defendants, because she applied an incorrect legal standard in ruling on that motion.

Here, the magistrate judge originally imposed a deadline of March 12, 2020 to amend pleadings.  [VOL. I, pp. 229, 237].  Subsequently, however, the magistrate judge granted Seale an extension until November 30, 2020 to identify and serve the

unidentified defendants.    [VOL. II, p. 36].    Seale sought leave to amend his

complaint to substitute Peacock for the unidentified defendants on November 23,

2020, before the November 30, 2020 deadline had expired.    [VOL. II, pp. 37-39].

Because Seale's request for leave to amend was timely, the magistrate judge should

have applied the standard for motions seeking leave to amend under Fed. R. Civ. P.

15(a).

Instead, the magistrate judge utilized the standard applicable to motions

seeking leave to amend after the deadline expires.    [VOL. II, pp. 127-29].    This

standard requires the moving party to first demonstrate good cause for a modification

of the scheduling order under Fed. R. Civ. P. 16(b)(4), and then satisfy the Fed. R.

Civ. P. 15(a) standard for amendments.    ***Gorsuch, Ltd., B.C.*, 771 F.3d at 1240**.    The

magistrate's use of this standard was an abuse of discretion because it only applies

when a party seeks leave to amend "[a]fter a scheduling order deadline[.]" Id.

Indeed, the good cause test is designed to require "the moving party to show that it

has been diligent in attempting to meet the deadlines, which means it must provide

an adequate explanation for any delay." ***Minter v. Prime Equipment Co.*, 451 F.3d**

**1196, 1205 n.4 (10th Cir. 2006)**.    Because Seale sought leave to amend before the

deadline for substituting a party for the unidentified defendants it was inappropriate

for the magistrate judge to require Seale to demonstrate diligence in meeting

47

deadlines or to explain his delays. By applying an incorrect legal standard, the magistrate judge abused her discretion. *Farmer*, **791 F.3d at 1256**.

Because the magistrate judge incorrectly found that Seale's motion to amend was "late" and applied the standard applicable to motions to amend made after the deadline for amendment had expired, the magistrate judge focused on whether Seale had demonstrated good cause under Fed. R. Civ. P. 16(b)(4), not whether amendment was appropriate under Fed. R. Civ. P. 15(a). Seale -- who sought leave to amend to substitute Peacock for the unidentified defendants before the deadline expired -- could not have reasonably anticipated that the magistrate judge would determine that his (proposed) amendment was late or that the two-part standard applied. Seale had no notice the magistrate judge would apply that standard and, as a result, his Second Motion to Amend Complaint did not attempt to demonstrate that standard had been satisfied. [VOL. II, pp. 37-39]. **Even Peacock declined to argue that the two-part standard applied or that Seale failed to meet that standard**. [VOL. II, p. 109-15].

Though the parties did not address the issue of "good cause," and the record before the magistrate judge was silent on that issue, the magistrate judge focused exclusively on that issue in ruling on Seale's motion, ultimately denying the motion because she found Seale did not demonstrate good cause. [VOL. II, p. 126-35]. The

magistrate judge did not even consider whether amendment was appropriate under Fed. R. Civ. P. 15(a). Because the magistrate judge applied an incorrect legal standard, and improperly denied Seale's motion to amend based on that standard, the Court should reverse the magistrate judge's order denying Seale's motion to amend and remand for a determination of whether leave to amend should have been granted pursuant to Fed. R. Civ. P. 15(a).

C.    *Assuming it was Appropriate to Consider Whether Seale Demonstrated "Good Cause," Seale Met that Standard.*

Additionally, to the extent the magistrate judge appropriately considered whether Seale had demonstrated good cause to amend the scheduling order in ruling on his Second Motion to Amend the Complaint, she improperly ruled that Seale failed to satisfy that standard. Seale demonstrated that he made diligent efforts to determine the identity of the unknown defendants, including working with police and postal investigators, retaining a private investigator and forensic investigator, and conducting fingerprint and DNA testing. [VOL. I, pp. 220-21]. Seale actually discovered information that led to his identification of Peacock as the person responsible for the November and December 2017 mailings during discovery utilizing subpoenas and a computer forensics expert. [VOL. II, pp. 78-104]. Because Seale learned this information through discovery, good cause existed to permit the amendment he requested. ***Gorsuch, Ltd., B.C.*, 771 F.3d at 1240**.

49

The magistrate judge heavily emphasized that Seale was in possession of photographs that provided the basis for his Second Motion to Amend the Complaint throughout the litigation.  [VOL. II, p. 130-31].  Seale's mere possession of the photographs did not establish lack of diligence or unreasonable delay because Seale did not, and could not have, initially recognize the significance of what the pictures showed.  It was only after he had an adequate opportunity to review and consider the details in the photographs in light of the other evidence that he realized the significance of the photograph showing his Manhunt profile and the reflection showing Peacock took the photograph.  [VOL. II, p. 59-60, ¶¶ 12-17].  Any delays in recognizing the significance of the image and reflection and determining from them, in combination with other information, that Peacock possessed the explicit image used in the November-December 2017 mailings, was the product of oversight, inadvertence, or excusable neglect sufficient to excuse the timing of the motion.  *Sil-Flo, Inc. v. SFHC, Inc.*, **917 F.2d 1507, 1519 (10th Cir. 1990)**.  Given Seale's reasonable diligence in investigating who was responsible for the mailings and accessing his CTM account as well as the magistrate judge's order affording him until November 30, 2020 to substitute parties for the John Doe defendants, the magistrate judge should not have rigidly adhered to the March 23, 2020 deadline for

pleading amendments. *Id.* ("rigid adherence to the pretrial scheduling order is not advisable").

Thus, the magistrate judge's denial of Seale's Second Motion to Amend the Complaint was an abuse of discretion.

## III. THE MAGISTRATE JUDGE ERRED IN DISMISSING SEALE'S CLAIMS WITH PREJUDICE.

### A. *Standard of Review.*

Whether a court properly dismissed claims with prejudice is reviewed for abuse of discretion. ***Chase v. Divine*, 543 Fed. Appx. 767, 769 (10th Cir. 2013)** ("in considering whether the dismissal should have been with prejudice, we review the ruling only for an abuse of discretion."); ***Baca v. Berry*, 806 F.3d 1262, 1269 (10th Cir. 2015)** (denial of request for dismissal without prejudice under Fed. R. Civ. P. 41(a)(2) is reviewed for abuse of discretion). "A district court abuses its discretion when it (1) fails to exercise meaningful discretion, such as acting arbitrarily or not at all, (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relies on clearly erroneous factual findings." ***Farmer*, 791 F.3d at 1256**.

B.     *The Magistrate Judge Applied an Incorrect Legal Standard in Dismissing the Claims Against Peacock with Prejudice.*

This Court has recognized that "[a] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) <u>and granting leave to amend would be futile</u>." (Emphasis added). ***Brereton v. Bountiful City Corp., 434 F.3d 1213, 1219 (10th Cir. 2006) (citing Grossman v. Novell, Inc., 120 F.3d 1112, 1126 (10th Cir. 1997));* see *Chase,* 543 Fed. Appx. at 769**. This requirement exists, in part, because this Court has recognized that "[i]n dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" ***Triplett,* 712 F.2d at 446 (quoting 3 Moore's Federal Practice § 15.10 n.2 (1983))**.

The magistrate judge dismissed Seale's claims against Peacock with prejudice in her order granting Peacock's motion to dismiss. [VOL. I, p. 266]. Though Peacock subsequently filed a motion to amend the judgment and specifically requested the magistrate judge to reconsider the dismissal with prejudice because she had not considered whether amendment was futile, the magistrate judge denied that motion. [VOL. II, p. 124]. And, the following day, the magistrate judge again dismissed Seale's claims against Peacock with prejudice in her order denying Seale's Second Motion to Amend the Complaint. [VOL. II, p. 132]. None of the magistrate's dismissal orders considered whether amendment was futile, and the

magistrate judge made no findings that it was.  [VOL. I, pp. 259-66, Vol. II, pp. 126-33, 135-36]. Because the magistrate judge failed to determine whether amendment would be futile, she applied an incorrect legal standard in dismissing Seale's claims against Peacock with prejudice and, thereby, abused her discretion.  ***Chase*, 543 Fed. Appx. at 769**; ***Brereton*, 434 F.3d at 1219**.

Had the magistrate judge applied the appropriate legal standard and considered whether the (alleged) defects in Seale's complaint could be cured *via* amendment (***Triplett*, 712 F.2d at 446**), she should have reached a different result. Seale's (proposed) second amended complaint readily demonstrated how the alleged pleading defects could have been cured by amendment.  For instance, the magistrate judge found that Seale's civil theft claim deficient because Seale had not plausibly alleged "that [] Peacock intended to *permanently* deprive [him] of his property[.]" (Emphasis in original). [VOL. I, p. 263]. The (proposed) second amended complaint rectified this alleged defect because it pled facts permitting the inference that Peacock accessed the CTM account, which contained private information concerning Seale's clients and that, around the same time, Seale lost numerous employees and clients. [VOL. I, pp. 285-89, ¶¶ 13-14, 19-21, 31-36]. The (proposed) second amended complaint also alleged facts permitting the reasonable inference that Peacock diverted one of Seale's clients for his own benefit and served as the

agent on the sale of that client's home -- through his new brokerage -- on August 17, 2018. [VOL. I, p. 288, ¶ 21]. Because "intent … and other conditions of a person's mind may be alleged generally" under Fed. R. Civ. P. 9(b), Seale's allegations were sufficient to permit the reasonable inference Peacock acted with specific intent to permanently deprive Seale of property, *i.e.*, client information, client contracts and expected commission income. ***Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (quoting C.R.S. § 18–4–401(1))**. Thus, the magistrate judge should have permitted Seale to amend rather than dismissing his civil theft claim with prejudice. ***Triplett*, 712 F.2d at 446**.

Likewise, the magistrate judge found Seale's invasion of privacy and SCA claims deficient because Seale (allegedly) failed to plead facts establishing actual damages. [VOL. I, pp. 264-65]. However, Seale's (proposed) second amended complaint cured this (alleged) defect by pleading factual details concerning Seale's economic and non-economic damages. [VOL. I, pp. 285-89, ¶¶ 13-14, 19-21, 31-36]. The allegations in the (proposed) second amended complaint permitted the reasonable inference that the accessing of Seale's CTM account caused him to lose clients, employees, commissions and revenue. [VOL. I, pp. 285-89, ¶¶ 13-14, 19-21, 31-36]. They also permitted the reasonable inference that Peacock caused Seale to suffer "psychological and mental health harm" -- diagnosed by a physician --

54

including "non-psychotic paranoia, increased anxiety, increased depressive periods, and lower motivation" and "distrust and ongoing anxiety episodes." [VOL. I, p. 289, ℙ 35].

The (proposed) second amended complaint also specifically connected Peacock's act of accessing of Seale's CTM account with the latter's non-economic damages; more specifically, that (proposed) pleading noted Seale's physician reporting that "after [] learn[ing] of someone breaking into his business account[,] [] [Seale] had increased anxiety," and that "there is significant support that the events underlying [Seale's] legal complaint have dominated his thinking and his emotional experience since they transpired." [VOL. I, p. 289, ℙ 35]. These allegations were sufficient to state claims for invasion of privacy and violation of the SCA. *Joe Dickerson & Associates, LLC v. Dittmar*, **34 P.3d 995, 997 (Colo. 2001)** (plaintiff asserting invasion of privacy claim must establish that he or she "suffered damages" and that "the defendant caused the damages incurred."); **18 U.S.C. § 2707(c)** (authorizing an award of "actual damages suffered by the plaintiff and any profits made by the violator" on a claim for violation of the SCA).

Accordingly, the magistrate judge abused her discretion in dismissing Seale's civil theft, invasion of privacy and SCA claims. And that is equally true in connection with the magistrate judge's dismissal of those claims with prejudice. In

other words and because "[f]utility of amendment is a question of law we review de novo" (***Weldon v. Ramstad-Hvass*, 512 Fed. Appx. 783, 797 (10th Cir. 2013)**)), the dismissal of Seale's invasion of privacy and SCA claims should be reversed, and this matter remanded with instructions to permit Seale to amend his complaint -- consistent with his (proposed) second amended complaint -- in order to cure the (alleged) defects in his civil theft, invasion of privacy and SCA claims. Alternatively, this matter should be remanded for further proceedings, including determinations as to whether

- amendment would cure the (alleged) defects in Seale's complaint or not; and whether,

- Seale's claims should be dismissed in light thereof.

## CONCLUSION

For all of the foregoing reasons, the judgment against Seale should be reversed -- including the dismissal of his claims against Peacock with prejudice as well as the denial of his motion for leave to amend his complaint to cure the (alleged) defects identified by the magistrate judge and to substitute Peacock for the John Doe defendants -- and this matter should be remand for further proceedings in order that Seale may obtain a determination on the merits.

DATED 2nd DAY OF AUGUST 2021

Respectfully Submitted,

**BRYAN SEALE**

By: [s/ Brian Molzahn]_____

Brian Molzahn
Jared E. Ellis
HALL & EVANS, LLC
1001 Seventeenth Street, Suite 300
Denver Colorado 80202
(303) 628-3400
molzahnb@hallevans.com
ellisj@hallevans.com

## CERTIFICATE OF COMPLIANCE
## <u>WITH TYPE-VOLUME LIMIT</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains **11,423** words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point, Times New Roman font.

DATED: AUGUST 2, 2021.

[*s/ Jared R. Ellis*]            
COUNSEL FOR
PLAINTIFF/APPELLANT
BRYAN SEALE

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I hereby certify that with respect to the foregoing:

(1)     all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)     if required to file additional hard copies, those will be exact copies of the version submitted electronically;

(3)     this digital submission has been scanned for viruses with the most recent version of a commercial virus program, McAfee Endpoint Security, Version No. 10.6, last scanned on August 2, 2021, and according to the program, is free of viruses.

[*s/Jared R. Ellis*]
COUNSEL FOR
PLAINTIFF/APPELLANT
BRYAN SEALE

59

## CERTIFICATE OF SERVICE

I, Cristina Ramirez, hereby certify that on this 2nd day of August 2021, a true and correct copy of the foregoing **PLAINTIFF/APPELLANT BRYAN SEALE'S OPENING BRIEF** was filed electronically -- *via* the CM/ECF system -- with the United States District Court for the District of Colorado and similarly served upon each of the following:

**COUNSEL OF RECORD**

[*s/ Cristina Ramirez* ]_____

Cristina Ramirez
HALL & EVANS, LLC
1001 Seventeenth Street Suite 300
Denver, Colorado 80203
(303) 628-3300

# <u>ATTACHMENT 1</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–03559–KMT

BRYAN SEALE,

      Plaintiff,

v.

GARY PEACOCK,
JOHN DOE and/or JANE DOE, whose true name(s) are unknown,

      Defendants.

---

## ORDER

---

This matter is before the court on "Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 23 [Mot.], filed January 13, 2020), to which Plaintiff responded in opposition (Doc. No. 24 [Resp.], filed January 27, 2020) and Defendant replied (Doc. No. 25, filed January 27, 2020).

### STATEMENT OF THE CASE

Plaintiff filed his Complaint on November 6, 2019, in the District Court for El Paso County, Colorado.  (Doc. No. 7 [Compl.].)  Defendant Gary Peacock removed the case to this Court on December 16, 2019, asserting jurisdiction on the basis upon diversity pursuant to 28 U.S.C. § 1332.  (Doc. No. 1.)  On January 9, 2020, Plaintiff filed an Amended Complaint.  (Doc. No. 19 [Am. Compl.].)

Both Plaintiff and Defendant Peacock are licensed real estate agents in the State of Colorado and were previously married.  (Am. Compl., ¶¶ 5, 7, 10.)  In November 2017, someone anonymously mailed at least 12 letters to various acquaintances of Plaintiff that included statements about his dating and sexual activity.  (*Id.*, ¶ 12.)  These letters also included explicit photographs of Plaintiff and copies of his profile from a public dating website and purportedly made references to Plaintiff's business.  (*Id.*)  Plaintiff refers to this communication as the "First Letter."  (*Id.*)

Also in November 2017, someone mailed Plaintiff a letter stating that an "attorney will be getting a subpoena to [Plaintiff] to testify in [a] divorce case" and asking whether Plaintiff likes "breaking up families."  (*Id.*, ¶ 14.)  In December 2017, someone anonymously mailed at least three letters to various acquaintances of Plaintiff.  (*Id.*, ¶ 13.)  These letters contained information similar to the First Letter.  (*Id.*.)  Plaintiff refers to this communication as the "Second Letter."  (*Id.*)  After the mailing of these letters, four real estate agents left their employ with Plaintiff, and three clients stopped doing business with him.  (*Id.*, ¶ 16.)

Plaintiff uses an electronic real estate contract platform called CTM Software ("CTM") which contains information on current and potential customers of Plaintiff's real estate business.  (*Id.*, ¶ 8.)  This software, among other things, allows customers to upload documents related to their real estate contracts.  (*Id.*)  In December 2018, someone accessed Plaintiff's CTM account twenty times without his permission.  (*Id.*, ¶¶ 9–11.)  Based on certain internet protocol addresses, Plaintiff believes the person who accessed his account was Defendant Peacock.  (*Id.*)

Plaintiff asserts three claims against Defendant Peacock, including Statutory Civil Theft (*id.* at 5), Violation of 18 U.S.C. § 2701, Stored Communications Act (*id.* at 15), and Invasion of

Privacy by Appropriation of Name or Likeness (*id.* at 16).  Defendant Peacock moves to dismiss the claims against him in their entirety for failure to state a claim upon which relief can be granted.  (*See* Mot.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id.* at 679–81.  Second, the Court considers the factual allegations "to

determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## ANALYSIS

### A.    *Civil Theft Claim*

To state a claim for civil theft, a plaintiff must allege the elements of criminal theft: that the defendant " 'knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception,' and acts intentionally or knowingly in ways that deprive the other person of the property permanently." *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 608 (quoting Colo. Rev. Stat. § 18–4–401(1)). Thus, civil theft, like criminal theft, requires the specific intent of the defendant to permanently deprive the owner of the benefit of the property. *Id.*

Defendant argues Plaintiff's civil theft claim fails because he has not plausibly alleged that Defendant's access of his CTM account permanently deprived Plaintiff of anything of value. Indeed, Plaintiff merely alleges that "a person without authorization to do so, logged on to his account" in December 2018 and that his account "was accessed via an IP address . . . which belongs to [Defendant] Peacock."  (Am. Compl., ¶¶ 9, 11.)  These allegations do not give rise to a claim for civil theft as a matter of law, as Plaintiff has failed to allege "a knowing use by the defendant inconsistent with the owner's *permanent* use and benefit."  *Huffman*, 205 P.3d at 509 (emphasis added).

In his response, Plaintiff argues that "[r]easonable inferences based on [the] factual allegations [in the complaint] may include that Defendant wrongfully accessed Plaintiff's CTM account, thereby obtaining or exercising control over something of value belonging to Plaintiff[ and] that Defendant used said thing(s) of value intending that such would deprive Plaintiff permanently of its use."  (Resp. at 5 [emphasis added].)  However, Plaintiff has not plausibly alleged any facts to support an inference that Defendant Peacock intended to *permanently* deprive Plaintiff of his property.  Furthermore, Plaintiff's Amended Complaint is devoid of any allegations of Defendant Peacock's intent.  *See Scott v. Scott*, 428 P.3d 626, 633 (Colo. App. 2028), cert. denied, No. 18SC243, 2018 WL 5052214 (Colo. Oct. 15, 2018) (single conclusory statement about the defendant's mens rea in civil theft case insufficient to state a civil theft claim).

Plaintiff's civil theft claim is dismissed.

**B.      *Invasion of Privacy by Appropriation of Name or Likeness***

To prevail on a claim for invasion of privacy by name or likeness, Plaintiff must allege "(1) the defendant used the plaintiff's name or likeness; (2) the use of the plaintiff's name or likeness was for the defendant's own purposes or benefit, commercially or otherwise; (3) the plaintiff suffered damages; and (4) the defendant caused the damages incurred." *Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995, 997 (Colo. 2001).

Plaintiff alleges that Defendant Peacock's alleged access to Plaintiff's CTM account caused him "mental anguish and/or loss of clients." (Am. Compl., ¶ 127). Defendant Peacock argues this allegation is not a plausible allegation of damages because Plaintiff fails to identify a specific client he lost. (Mot. at 5.) In response, Plaintiff argues that in his Amended Complaint he alleges he lost three clients and a business relationship because of "the First Letter and/or Second Letter . . . and/or the wrongful accessing of Plaintiff's CTM account." (Resp. at 10.) However, Defendant Peacock is correct that any damages flowing from the mailing of the letters is irrelevant to this claim because, according to the allegations in the Amended Complaint, the alleged access of the CTM account occurred over a year after the letters were sent. (*See* Am. Compl., ¶¶ 8–14.)

Defendant Peacock also argues that Plaintiff has failed to allege how access to the CTM account caused mental anguish. (Mot. at 5.) The court agrees with Defendant Peacock that this is a "bare assertion" and a "[t]hreadbare recital[]" of an element of the claim, which is unsupported and does not suffice at the pleading stage. *Iqbal*, 556 U.S at 678.

Plaintiff's invasion of privacy by appropriation of name or likeness claim is dismissed.

C.      *Stored Communications Act*

The Stored Communications Act ("SCA") prohibits anyone from "intentionally access[ing] without authorization," or "intentionally exceed[ing] an authorization to access," any "facility through which an electronic communication service is provided," and "thereby obtain[ing], alter[ing], or prevent[ing] authorized access to a wire or electronic communication while it is in electronic storage in such system."  18 U.S.C. § 2701(a).  The SCA provides a "court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000."  18 U.S.C. § 2707(c).

Plaintiff's Amended Complaint alleges he has "incurred damages by Mr. Peacock's violation of [the SCA] in an amount to be proven at trial."  (Am. Compl., ¶ 122.)  Defendant argues Plaintiff's SCA claim should be dismissed because Plaintiff does not plausibly allege damages from the access of Plaintiff's CTM account.  (Mot. at 6 [citing *Twombly*, 550 U.S. at 570].)  Again, in response, Plaintiff argues he has suffered actual damages for his SCA claim because "one or more of [his] losses was caused by the First Letter and/or the Second Letter . . . and/or the wrongful accessing of Plaintiff's CTM account."  (Resp. at 6–7.)  As set out above, however, any damages flowing from one of the two letters are irrelevant to the access of the CTM account on which the SCA claim is based.  Moreover, the balance of Plaintiff's allegations are, again, bare assertions that do not plausibly allege actual damage from the access of Plaintiff's CTM account.  *Iqbal*, 556 U.S at 678.

Plaintiff's Stored Communications Act is dismissed.

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that "Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)" (Doc. No. 23) is **GRANTED**.  Plaintiff's claims against Defendant Peacock are dismissed with prejudice for failure to state a claim upon which relief can be granted.

Dated this 27th day of August, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

<u>**ATTACHMENT 2**</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–03559–KMT

BRYAN SEALE,

     Plaintiff,

v.

GARY PEACOCK,
JOHN DOE and/or JANE DOE, whose true name(s) are unknown,

     Defendants.

---

**ORDER**

---

This matter is before the court on "Plaintiff's Forthwith Motion to Amend Complaint with Respect to Claims Against Unknown Defendnats [sic] Pursuant to Fed. R. Civ. P. 15(a)(2)" (Doc. No. 50 [Mot.], filed November 23, 2020). Defendant Peacock filed his response in opposition (Doc. No. 52 [Resp.], filed November 24, 2020), and Plaintiff replied (Doc. No. 53 [Reply], filed November 25, 2020).

**BACKGROUND**

Plaintiff filed his Complaint on November 6, 2019, in the District Court for El Paso County, Colorado. (Doc. No. 7 [Compl.].) Defendant Gary Peacock removed the case to this Court on December 16, 2019, asserting jurisdiction on the basis upon diversity pursuant to 28 U.S.C. § 1332. (Doc. No. 1.) On January 9, 2020, Plaintiff filed an Amended Complaint. (Doc. No. 19 [Am. Compl.].) This court held a Scheduling Conference on February 25, 2020 (*see* Doc.

Nos. 35 & 36), in which it set the deadline of March 20, 2020, for amendment of pleadings (Doc. No. 36 at 7).  Plaintiff did not seek or receive an extension of this deadline.

In his Amended Complaint, Plaintiff asserted three claims against Defendant Peacock, including Statutory Civil Theft (*id.* at 5), Violation of 18 U.S.C. § 2701, Stored Communications Act (*id.* at 15), and Invasion of Privacy by Appropriation of Name or Likeness (*id.* at 16).  This court dismissed with prejudice Plaintiff's claims against Defendant Peacock on August 27, 2020. (Doc. No. 42 [Order] at 8.)

The court did not dismiss Plaintiff's claims against the Doe Defendants at that time. Rather, the court granted Plaintiff three extensions of time to identify and serve the Doe Defendants.  (*See* Doc. Nos. 29, 34, 39, 40, 48, 49.)  The most recent order allowed Plaintiff an extension to and including November 30, 2020, to identify and serve the unknown defendants, advised Plaintiff that if he failed to serve the unknown defendants by that date the court would dismiss the claims against the unknown defendants without prejudice pursuant to Fed. R. Civ. P. 4(m), and advised Plaintiff that no further extensions of this deadline would be granted.  (Doc. No. 49.)

On November 23, 2020, Plaintiff filed the present Motion to Amend his complaint "with respect to his claims against unknown defendants."  (Mot. at 1.)  Plaintiff seeks to amend his previous complaint in its entirety and assert sixteen new claims against only the previously-dismissed defendant, Gary Peacock.  (*See* Mot., Attachs. 1.)

## STANDARDS OF REVIEW

Under Tenth Circuit law, courts employ a two-step analysis in determining whether to allow a party to amend the pleadings after the deadline established by the Scheduling Order has

passed. *See generally Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015)

(discussing the two-step analysis under Federal Rules of Civil Procedure, Rules 16 and 15, when

a party seeks leave to amend a pleading after the relevant Scheduling Order deadline has passed).

First, the court considers whether the moving party demonstrates good cause pursuant to Rule

16(b) of the Federal Rules of Civil Procedure. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank

Ass'n*, 771 F.3d 1230, 1242 (10th Cir. 2014). If the moving party can demonstrate good cause,

the court then weighs whether the amendment should be allowed pursuant to Rule 15(a). *Id.*

  Rule 16(b) provides that a scheduling order "may be modified only for good cause and

with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the

movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent

efforts.' " *Gorsuch*, 771 F.3d at 1240 (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D.

667, 668 (D. Colo. 2001)). This burden is satisfied, for example, when a party learns of new

information in a deposition or if the governing law has changed. *Id.* "Rule 16(b) does not focus

on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the

diligence of the party seeking leave to modify the scheduling order to permit the proposed

amendment." *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

  Rule 15(a) provides that leave to amend "shall be freely given when justice so requires."

Fed. R. Civ. P. 15(a). The court may refuse leave to amend upon a showing of undue delay,

undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies

by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.*, 3 F.3d

1357, 1365 (10th Cir. 1993). Whether to allow amendment is within the trial court's discretion.

*Burks v. Oklahoma Publ'g Co.*, 81 F.3d 975, 978–79 (10th Cir. 1996). However, if Plaintiff fails

to show good cause under Rule 16(b)(4), there is no need for the court to move on to the second step of the analysis, i.e., whether Plaintiff has satisfied the requirements of Rule 15(a). *Carbajal v. St. Anthony Cent. Hosp.*, No. 12–CV–02257–REB–KLM, 2015 WL 1499864, at *3 (D. Colo. Mar. 27, 2015) (citing *Nicastle v. Adams Cnty. Sheriff's Office*, No. 10–cv–00816–REB–KMT, 2011 WL 1465586, at *3 (D. Colo. Mar. 14, 2011), *adopted by* 2011 WL 1464588 (Apr. 18, 2011)).

## ANALYSIS

### A.  *Fed. R. Civ. P. 16(b)(4)*

In his Motion to Amend, Plaintiff's only justification for his late amendment of the complaint is that he has "recently obtained additional factual information which, together with information previously obtained, forms the basis for naming an individual defendant in place of the unknown defendant(s)." (Mot. at 2.) In his Third Amended Complaint, Plaintiff alleges that

> 12) Recently, Plaintiff was reviewing some photographs on his computer and discovered a photograph of Mr. Peacock taking a photograph of himself in a mirror using his mobile phone. A copy of that photograph is attached hereto as Exhibit D.
> 13) Additionally, Plaintiff recently discovered a photograph of his tablet, which was sitting on top of his planner. When the photograph was taken, the tablet contained a view of Plaintiff's profile from the Manhunt website, which profile included a depiction [of] the explicit photograph that was included in the First Letter and the Second Letter. A copy of that photograph is attached hereto as Exhibit E.

(Mot., Attach. 1 at 20. ¶¶ 12-13.) In his Reply, Plaintiff argues that

> 1) a series of anonymous mailings were mailed to various acquaintances of Plaintiff, including but not limited to individuals to whom Plaintiff had business relationships; 2) those mailings contained statements with respect to Plaintiff's dating activity and sexual activity, and included explicit photographs of Plaintiff as well as a screenshot of his dating profile from a dating website entitled Manhunt; 3) as revealed by Exhibits D and E to the Complaint, Defendant Gary

> Peacock was in possession of an explicit photograph which was included in the
> mailings, as he took a picture of that photograph with his phone.

(Reply at 2.)

Plaintiff's Motion to Amend does not address Rule 16(b)(4) or the good cause standard.

Moreover, the proposed Third Amended Complaint and the briefing are devoid of any specific

explanation of when Plaintiff reviewed his computer and tablet to discover the photographs

which now form the basis for his Motion to Amend.  "A party does not demonstrate good cause

to modify a scheduling order to accommodate an otherwise untimely motion to amend by simply

pointing to information learned after that deadline.  Rather, the party must also show it acted

diligently in moving to amend once it learned of this new information."  *Farr v. Jackson Nat'l*

*Life Ins. Co.*, No. 19–4095–SAC–ADM, 2020 WL 5118068, at *1 (D. Kan. Aug. 31, 2020).

Plaintiff's explanation that he "recently obtained information" is insufficient to show diligent

efforts or good cause, especially where the photographs were in his possession since the

inception of the case.

Plaintiff also argues that, in his Third Amended Complaint, he alleges "Plaintiff's CTM

account was accessed from Liberty Toyota on Woodmen Road in Colorado Springs on a day at

which it has been confirmed that Mr. Peacock was present at that location" and that and "solid

evidence [exists] establishing that Mr. Peacock obtained unauthorized access to the very

photograph that was contained in the anonymous mailings at issue in this case."  (Resp. at 3.)  In

the First Amended Complaint, which was the operative complaint at the time the court dismissed

the claims against Defendant Peacock with prejudice, Plaintiff alleged the following:

> Furthermore, Plaintiff was able to learn that: i) on at least one instance on or about
> December 13, 2018, his CTM account was accessed via an IP address which
> belongs to Liberty Toyota on Woodmen Road in Colorado Springs, Colorado, at a

> time when, upon information and belief, Mr. Peacock would have been at that
> business for service on a vehicle, and ii) on another instance on or about
> December 17, 2018, his CTM account was accessed via an IP address which
> belongs to Mr. Peacock's then current employer, which is a real estate business.

(Am. Compl. at 3, ¶ 11.)  In his proposed Third Amended Complaint, Plaintiff alleges,

> By way of a subpoena to produce documents served upon Liberty Toyota on
> Woodmen Road in Colorado Springs, CO, and an expert report provided to
> Plaintiff by Iuvare Cyber, Plaintiff has discovered that on December 13, 2018, his
> CTM account was accessed from an IP address which is registered to that
> business and that Mr. Peacock was present at that business on that day.  A copy of
> the material responsive to that subpoena is attached hereto as Exhibit F and a copy
> of Iuvare Cyber's expert report is attached hereto as Exhibit G.

(Doc. No. 50-1 at 21, ¶ 20.)  The Subpoenas to Larry H. Miller of Colorado Springs, referenced

as Exhibit F to Plaintiff's proposed Third Amended Complaint, are dated April 1, 2020.  (*Id*. at

50–57.)  The letter in response to the subpoenas from Larry H. Miller to Plaintiff's counsel is

dated April 16, 2020, and was sent by email.  (*Id.* at 48–49.)  The Expert Witness Report

referenced as Exhibit G to Plaintiff's proposed Third Amended Complaint is dated May 26,

2020.  (*Id.* at 58–73.)  Plaintiff did not seek to amend his complaint to clarify his previously-

dismissed claims against Defendant Peacock until September 24, 2020—more than five months

after he received a response to the Subpoenas and four months after he received the Expert

Witness Report.[1]  And Plaintiff did not seek to amend his complaint to assert new claims against

Defendant Peacock until November 23, 2020—more than seven months after he received a

response to the Subpoenas and six months after he received the Expert Witness Report.

Plaintiff's Motion to Amend fails to provide any basis for seeking to amend his complaint

months after receiving the information upon which his Motion to Amend relies.

---

[1] The court denied this motion as moot based on the later-filed motion to file a Third Amended
Complaint.  (*See* Doc. No. 54.)

The court finds Plaintiff fails to establish excusable neglect and good cause to support his Motion to Amend after expiration of the amendment deadline.  Accordingly, Plaintiff's Motion to Amend is denied.

**B.**   ***Claims Against John Doe and/or Jane Doe Defendants***

It appears that, based on the proposed Third Amended Complaint, Plaintiff is abandoning his claims against the John Doe and/or Jane Doe Defendants.  However, to the extent Plaintiff does not intend to abandon the claims, the claims are now dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m) and this court's previous order.  (*See* Doc. No. 49.)

**WHEREFORE**, for the foregoing reasons, it is

**ORDERED** that "Plaintiff's Forthwith Motion to Amend Complaint with Respect to Claims Against Unknown Defendnats [sic] Pursuant to Fed. R. Civ. P. 15(a)(2)" (Doc. No. 50) is **DENIED**.  Pursuant to this court's Order dated August 27, 2020, the claims against Defendant Peacock are **DISMISSED** with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).  (*See* Doc. No. 42.)  It is further

**ORDERED** that the claims against the John Doe and/or Jane Doe Defendants are dismissed without prejudice, pursuant to Fed. R. Civ. P. 4(m).  It is further

**ORDERED** that judgment shall enter in favor of the defendants and against the plaintiff on all claims for relief and causes of action asserted in this case.  It is further

**ORDERED** that the defendants are awarded their costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.  It is further

**ORDERED** that this case is **CLOSED**.

Dated this 11th day of March, 2021.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge