No. 21-1144

In the

# United States Court of Appeals
## For the Tenth Circuit

---

BRIAN SEALE,

*Plaintiff-Appellant,*

v.

GARY PEACOCK,

*Defendant-Appellee*

---

On Appeal from the United States District Court
for the District of Colorado
Honorable Kathleen M. Tafoya
Civil Action No. 19-cv-03559-KMT

---

## APPELLEE'S ANSWER BRIEF

---

Michael D. Kuhn
Andrew E. Swan
LEVENTHAL | LEWIS
KUHN TAYLOR SWAN PC
620 North Tejon Street, Suite 101
Colorado Springs, Colorado 80903
T: (719) 694-3000
mkuhn@ll.law
aswan@ll.law
*Counsel for Appellee*

---

Oral Argument Is Not Requested
August 15, 2021

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES.......................................................................ii

PRIOR OR RELATED APPEALS.............................................................. 1

JURISDICTIONAL STATEMENT ............................................................ 2

STATEMENT OF THE ISSUES................................................................. 3

STATEMENT OF THE CASE .................................................................... 3

SUMMARY OF ARGUMENT .................................................................... 5

ARGUMENT ............................................................................................. 6

I.      THE DISTRICT COURT PROPERLY DISMISSED SEALE'S
SCA CLAIM.................................................................................... 6

      A. The SCA Requires Actual Damages which Seale Failed
to Plausibly Allege .................................................................. 6

            1.  Relief under the SCA Requires Actual Damages......... 6

            2.  Seale Did Not Plausibly Allege Actual Damages ....... 11

            3.  Seale Cannot Rely on Punitive Damages and
Attorney Fees to State a Claim under the SCA ......... 15

      B. Seale Lacks Article III Standing even if the SCA Does
Not Require a Showing of Actual Damages ........................ 18

      C. Seale Did Not Plausibly Allege that Peacock Obtained,
Altered, or Prevented Authorized Access to a Wire or
Electronic Communication................................................... 21

II.    THE DISTRICT COURT PROPERLY DENIED SEALE
LEAVE TO AMEND TO SUBSTITUTE PEACOCK FOR
"JOHN DOE" ................................................................................ 22

A. The District Court Applied the Correct Legal Standard .... 22

B. Any Error Was Harmless Because the District Court Would Have Been Within Its Discretion to Deny Amendment under Fed. R. Civ. P. 15(a) .............................. 24

C. The Record Supports the District Court's Finding of Untimeliness and Undue Delay ........................................... 25

D. Seale's Proposed Amendment is Futile in Any Event ......... 28

    1. Seale Did Not Plausibly Allege Peacock Is "John Doe" ............................................................................... 28

    2. Seale's Claims Are Time Barred ................................. 29

III.  THE DISTRICT COURT PROPERLY DISMISSED SEALE'S CTM CLAIMS WITH PREJUDICE ................................................. 31

IV.  PEACOCK SHOULD BE AWARDED HIS ATTORNEY FEES RELATED TO THIS APPEAL ........................................... 34

CONCLUSION ...................................................................................... 35

CERTIFICATE OF COMPLIANCE ....................................................... 36

CERTIFICATE OF SERVICE .............................................................. 37

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Aldrich v. McCulloch Props., Inc.*,
  627 F.2d 1036 (10th Cir. 1980) ...................................................... 30, 31

*Anderson v. Suiters*,
  499 F.3d 1228 (10th Cir. 2007) ........................................................... 28

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. 28

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................ 4, 12, 13

*Brereton v. Bountiful City Corp.*,
  434 F.3d 1213 (10th Cir. 2006) ........................................................... 31

*Chadha v. Copra*,
  2012 WL 6044701 (N.D. Ill. Dec. 5, 2012) ......................................... 14

*Cornerstone Consultants, Inc. v. Prod. Input Sols., L.L.C.*,
  789 F. Supp. 2d 1029 (N.D. Iowa 2011) ....................................... 14, 15

*Doe v. Chao*,
  540 U.S. 614 (2004) ............................................................ 6, 7, 8, 9, 20

*Donchez v. Coors Brewing Co.*,
  392 F.3d 1211 (10th Cir. 2004) ........................................................... 33

*Feld v. Feld*,
  783 F. Supp. 2d 76 (D.D.C. 2011) ....................................................... 17

*First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*,
  820 F.2d 1127 (10th Cir. 1987) ........................................................... 25

*Fischer v. Mt. Olive Lutheran Church*,
  207 F. Supp. 2d 914 (W.D. Wis. 2002) ................................................ 22

*Gallagher v. United States*,
  2017 WL 4390172 (N.D. Cal. Oct. 3, 2017) ................................... 14, 15

*Garrett v. Fleming*,
  362 F.3d 692 (10th Cir. 2004) ............................................................. 29

*Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*,
  771 F.3d 1230 (10th Cir. 2014) ........................................................... 23

*Griffin v. Steeltek, Inc.*,
  261 F.3d 1026 (10th Cir. 2001) ........................................................... 17

*Henderson v. Bear*,
  968 P.2d 144 (Colo. App. 1998) .......................................................... 34

*Hovanec v. Miller*,
  831 Fed. Appx. 683 (5th Cir. 2020) ...................................................... 8

*Jennings v. Stephens*,
  574 U.S. 271 (2015) ............................................................................. 22

*Joe Dickerson & Assocs., LLC v. Dittmar*,
  34 P.3d 995 (Colo. 2001) .................................................................... 33

*Le Baud v. Frische*,
  156 F.3d 1243 (10th Cir. 1998) ........................................................... 24

*Little v. Budd Co.*,
  955 F.3d 816 (10th Cir. 2020) ............................................................. 15

*Maremont v. Susan Fredman Design Group, Ltd.*,
  2014 WL 812401 (N.D. Ill. Mar. 3, 2014) ............................................. 9

*Mohamad v. Palestinian Auth.*,
  566 U.S. 449 (2012) ............................................................................. 10

*Pallottino v. City of Rio Rancho*,
  31 F.3d 1023 (10th Cir. 1994) ............................................................. 24

*Rojas v. City of Ocala*,
  315 F. Supp. 3d 1256 (M.D. Fla. 2018) ............................................... 16

*Russell v. McMillen*,
  685 P.2d 255 (Colo. App. 1984) .......................................................... 30

*Scutieri v. Paige*,
  808 F.2d 785 (11th Cir. 1987) .......................................................... 16, 17

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ......................................................... 3, 18, 19, 21

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .................................................. 3, 18, 19, 20, 21

*Van Alstyne v. Electronic Scriptorium, Ltd.*,
  560 F.3d 199 (4th Cir. 2009) .......................................................... 9, 11, 20

*Vista Marketing, LLC v. Burkett*,
  812 F.3d 954 (11th Cir. 2016) ........................................................ 8, 9, 10

*Watson v. Unipress, Inc.*,
  733 F.2d 1386 (10th Cir. 1984) ........................................................... 29

## Constituional Provisions

U.S. Const. art. III, § 2 ............................................ 3, 5, 6, 18, 19, 20, 21

## Statutes

Colo. Rev. Stat. § 13-17-201 ................................................................ 34

Colo. Rev. Stat. § 13-80-102(1)(a)......................................................... 30

Colo. Rev. Stat. § 13-80-103(1)(a)......................................................... 30

Colo. Rev. Stat. § 18-4-401(1) ............................................................... 31

5 U.S.C. § 552a(g)(3)(A) ......................................................................... 7

18 U.S.C. § 2520 .................................................................................... 11

28 U.S.C. § 1331 ...................................................................................... 2

28 U.S.C. § 1332 ...................................................................................... 2

28 U.S.C. § 1441 ...................................................................................... 2

18 U.S.C. §§ 2701 *et seq.* ....................................................................... 3

18 U.S.C. § 2701(a) ................................................................ 3, 5, 21

18 U.S.C. § 2707(c) ............................................................ 9, 10, 17, 18

## Rules

Fed. R. Civ. P. 4(m) ................................................................ 23, 24

Fed. R. Civ. P. 15(a) ........................................................ 22, 23, 24, 25

Fed. R. Civ. P. 15(c)(3)(B) ........................................................... 29

Fed. R. Civ. P. 16(b)(4) ..................................................... 22, 23, 24, 25

## Other Authorities

Colo. Jury Instr. Civ. 22:12 n. 2 ..................................................... 30

RESTATEMENT (SECOND) OF TORTS § 218 cmt. e ...................................... 20

Senate Report 99-541 ............................................................... 10, 11

## <u>PRIOR OR RELATED APPEALS</u>

None.

## JURISDICTIONAL STATEMENT

Defendant/Appellee Gary Peacock ("Peacock") agrees with Plaintiff/Appellant Bryan Seale ("Seale") that the United States District Court for the District of Colorado had jurisdiction over this matter. Peacock further agrees that this Court has jurisdiction over this appeal—except to the extent Seale lacks standing for want of a concrete injury in fact as argued *infra*.

Peacock adds that the district court initially exercised removal jurisdiction pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332 (diversity). Seale's federal claim did not emerge until his first amended complaint. The district court thus had jurisdiction under 28 U.S.C. §§ 1331 and 1332.

## STATEMENT OF THE ISSUES

(1)    Are actual damages necessary to recover statutory damages under the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq.*; if so, did Seale plausibly allege them?

(2)    If actual damages are not required under the SCA, does Seale nonetheless lack Article III standing for want of a concrete injury as required by *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021)?

(3)    Without allegations that a person obtained, altered, or prevented access to a wire or electronic communication as required by 18 U.S.C. § 2701(a), does intentional access to an electronic facility nonetheless violate the SCA?

(4)    Did the district court abuse its discretion in denying Seale leave to file a third amended complaint when the proposed amendment was based on evidence that he possessed for months? Was the proposed amendment futile in any event?

(5)    Did the district court abuse its discretion in dismissing Seale's claims with prejudice?

## STATEMENT OF THE CASE

Seale's opening brief generally provides an accurate summary of the procedural and factual history of this case. Two pertinent points are missing, however. First, Peacock will explain in his

3

argument why Seale's "facts" about his purported damages are conclusory, implausible allegations that do not need to be assumed as true for purposes of the Court's analysis. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Second, Seale sought several extensions of time to serve an unknown "John Doe." [VOL. I, pp. 218-22, 242-47, 251-56; VOL. II, pp. 30-35.][1] In those motions, Seale referenced forthcoming results of a DNA analysis that he commissioned on one of the mailings that he refers to as the "November-December 2017 mailings." [*Id.*] To this day, Seale has not revealed the results of the analysis.

Peacock also provides a brief summary of the iterations of Seale's complaints. Seale alleged two groups of claims: those related to his real estate contract platform (the "CTM account") and those related to the November-December 2017 mailings.

Seale filed his first amended complaint in response to Peacock's motion to dismiss. This complaint alleged the CTM account claims against Peacock and the November-December 2017 mailings claims against an unknown "John Doe." [VOL. I, pp. 110-27.] Peacock renewed his motion to dismiss which the district court granted. [VOL. I., pp. 177-85, 259-66.]

---

[1] Peacock follows Seale's citation convention for the record. Citations to the appendix will be to volume and page number.

After dismissal, Seale sought leave to file a proposed second amended complaint adding additional allegations about the CTM account claims. [VOL. I, pp. 278-307.] While that motion was pending, Seale sought leave to file a proposed third amended complaint which alleges the "John Doe" claims against Peacock. [VOL. II, pp. 37-39, 57-77.] The proposed third amended complaint did not include the previously dismissed CTM account claims. The district court denied as moot the motion for leave to file a second amended complaint and denied the motion for leave to file a third amended complaint for want of good cause. [VOL. II, pp. 126-33.]

## SUMMARY OF ARGUMENT

Seale's arguments for reversal are meritless. The district court properly dismissed his SCA claim because he failed to plausibly allege actual damages from the access of his CTM account. Even if the SCA is unclear whether concrete injury is required to state a claim under that statute, standing under Article III requires it. Further, Seale did not plausibly allege that Peacock obtained, altered, or prevented access to a wire or electronic communication as required by 18 U.S.C. 2701(a).

The district court acted within its discretion when it denied Seale leave to amend his complaint to substitute Peacock for "John Doe." Seale unduly delayed moving to amend, waiting months after

5

finding "newly" discovered evidence. The proposed amendment is futile in any event. Therefore, the district court properly dismissed the CTM claims with prejudice and acted within its discretion to deny Seale leave to amend.

<u>ARGUMENT</u>

## I.   THE DISTRICT COURT PROPERLY DISMISSED SEALE'S SCA CLAIM.

The district court dismissed Seale's SCA claim because he failed to plausibly allege any actual damages from the access of his CTM account in December 2018. This Court should affirm the district court for myriad reasons including that Seale failed to plausibly allege (1) actual damages; (2) an actionable concrete injury for purposes of Article III standing; and (3) that Peacock obtained, altered, or prevented authorized access to a wire or electronic communication.

### A.   The SCA Requires Actual Damages which Seale Failed to Plausibly Allege.

#### 1.   <u>Relief under the SCA Requires Actual Damages.</u>

Seale first argues that actual damages are not required to recover statutory damages under the SCA. This argument is inconsistent with the plain text of the SCA and the Supreme Court's interpretation of nearly identical statutory language in *Doe v. Chao*, 540 U.S. 614 (2004).

In relevant part, the SCA provides:

> The court may assess as damages in a civil action under this section the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall *a person entitled to recover* receive less than the sum of $1,000.

18 U.S.C. § 2707(c) (emphasis added).

This language plainly limits the class of persons authorized to recover the minimum $1,000 statutory damages to those who are otherwise "entitled to recover" under this section—*i.e.*, persons with cases where there are actual damages or ill-gotten profits. Indeed, the second clause containing the "entitled to recover" language immediately follows the clause referencing the two types of recoverable damages (actual and profits), thus necessarily modifying it. Had Congress intended a different meaning, it would have written the statute to say: "anyone who violates this act shall be liable for the greater amount of (a) actual damages; or (b) $1,000." Instead, it chose to set a statutory floor of damages for those who have shown *some* actual damages.

This reading accords with the Supreme Court's opinion in *Doe*. In that case, the Court interpreted language from the Privacy Act of 1974 permitting the recovery of "actual damages" and stating that "in no case shall a person entitled to recovery receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(3)(A). The specific question

before the *Doe* Court was whether this language required the plaintiff to "prove some actual damages to qualify for a minimum statutory award of $1,000." *Doe*, 540 U.S. at 616.

The Court answered the question in the affirmative. The Court held that "the simplest reading of ['person entitled to recovery'] looks back to the immediately preceding provision for recovering actual damages[.]" *Id.* at 620. Said another way, to be a "person entitled to recovery" for purposes of statutory damages, a plaintiff must first show that he is entitled "to recover[] actual damages." The Court also drew from the common law noting that tort law generally requires not only a "wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed." *Id.* at 621.

The language at issue in *Doe* and that in the SCA are nearly identical—the only difference is the use of "recover" as opposed to "recovery." Insofar as nothing in the text of the SCA suggests a different interpretation of "person entitled to recover," the law should command the same result as in *Doe*.

Three federal circuits have addressed this issue under the SCA; all held that actual damages are required to recover statutory damages under the SCA. *See Hovanec v. Miller*, 831 Fed. Appx. 683, 685 (5th Cir. 2020) (unpublished); *Vista Marketing, LLC v. Burkett*,

812 F.3d 954, 964-75 (11th Cir. 2016); *Van Alstyne v. Electronic Scriptorium, Ltd.*, 560 F.3d 199, 205 (4th Cir. 2009).

*Vista Marketing* is factually analogous. That case involved a former wife intentionally accessing and viewing her ex-husband's emails. *See* 812 F.3d at 957. The jury found in favor of the ex-husband but declined to award any actual damages. *Id.* at 958. Citing *Doe*, the Eleventh Circuit held that actual damages are required to recover statutory damages under the SCA. *Id.* at 965-75. Like the ex-husband in *Vista Marketing*, Seale has no actual damages and thus cannot recover statutory damages.

Seale cites a handful of mostly unpublished district court cases and attempts to distinguish *Doe*. Seale points to the permissive language in the SCA (the "court may assess as damages") versus the mandatory language in the Privacy Act ("the United States shall be liable"). Seale then cites *Maremont v. Susan Fredman Design Group, Ltd.*, 2014 WL 812401, at *7 (N.D. Ill. Mar. 3, 2014), and argues the "may assess" language in the SCA means that the trial court has the option to assess either actual damages *or* statutory damages. This strained interpretation grasps at straws.

The permissive language in the SCA is cabined to the first clause of 18 U.S.C. § 2707(c), which defines the types of recovery available (*i.e.*, actual damages and profits); it does nothing to modify the following clause mentioning a minimum statutory

award of $1,000 for those persons already defined as "entitled to recover." *See Vista Mktg., LLC*, 812 F.3d at 972 (The "use of the word 'may' in the first sentence of § 2707(c) conveys only that, where actual damages or a violator's profits exist, a court has discretion to decide whether to award to the plaintiff actual damages or profits of the violator, or both or neither, when these damages exceed $1,000, instead of awarding just $1,000 in statutory damages."). Congress could have very easily decoupled statutory damages from actual damages, but it chose not to do so.

Seale then cites two unpublished district court opinions addressing the legislative history of the SCA. Seale argues these cases confirm that Congress intended a different damage model for the SCA than under the Privacy Act. This argument gets ahead of itself. Courts do not delve into legislative history when, as here, the text at issue is unambiguous. *See Mohamad v. Palestinian Auth.*, 566 U.S. 449, 458 (2012). Additionally, nothing in the legislative history undermines the "similarity of the language employed" in the damages provisions of the Privacy Act and the SCA and "the Supreme Court's textual analysis of that language." *Vista Mktg.*, 812 F.3d at 973.

Seale's legislative history argument appears to come from a single sentence in a Senate Report from 1986 stating, "damages under the section includ[e] the sum of actual damages suffered by

10

the plaintiff and any profits made by the violator as the result of the violation as provided in (c) with minimum statutory damages of $1,000." S. Rep. No. 99–541, at 82. As the Fourth Circuit held in *Van Alstyne*, this argument fails because the same Senate Report also addresses an amendment to the remedies provision of the Wiretap Act, 18 U.S.C. § 2520, which clearly separates statutory damages from actual damages. *See* 560 F.3d at 207. Specifically, the provision relating to the Wiretap Act states:

> The court may assess damages consisting of whichever is the greater of (A) the sum of the plaintiff's actual damages and any profits the violator made as a result of the violation; or (B) statutory damages of whichever is the greater of $100 a day or $10,000.

18 U.S.C. § 2520.

If Congress had intended the same outcome under the SCA, it would have employed similar language. Congress instead chose to require a plaintiff to show actual damages or ill-gotten profits to invoke the minimum $1,000 statutory damages.

2.    Seale Did Not Plausibly Allege Actual Damages.

Seale argues that he plausibly alleged actual damages from the access of his CTM account in December 2018. Seale claims the access caused "the loss of three clients, was harmful to his business, and was designed to negatively impact his reputation and/or his

business." Op. Br., p. 43. These allegations are conclusory and insufficient as a matter of law. *See Twombly*, 550 U.S. at 556-57.

Seale's "loss of three clients" cannot logically be attributed to the alleged access of his CTM account in December 2018 because, as the district court noted, the losses occurred *before* December 2018. Indeed, Seale alleges that his former clients worked with different Realtors on February 20, February 26, July 18, July 19, and August 17, 2018. [VOL. I, pp. 285-288.] Unless Peacock had access to a time machine, these losses could not have been caused by whatever Peacock (allegedly) did in December 2018.

The closest Seale comes to alleging a causal connection is his allegation that his former clients James and Suzy Hough sold their home on December 19, 2018 using a different Realtor. [*Id.* at 288.] It stretches the imagination to believe that Peacock accessed Seale's CTM account and, within six days, convinced Mr. and Mrs. Hough to change Realtors on the eve of their closing. But the Court need not go there: at no point has Seale alleged that Mr. and Mrs. Hough actually engaged Peacock as their Realtor.[2] Absent such an

---

[2] Nor would such an allegation be credible. Shane Bruckner of Nest Egg Realty, LLC listed the property on November 28, 2018, and closed the sale on December 19, 2018. *See* www.realtor.com/realestateandhomes-detail/2455-Reed-Grass-Way_Colorado-Springs_CO_80915_M19306-32328 (last accessed Aug. 16, 2021).

allegation, that loss of business cannot be attributed to Peacock's alleged access of the CTM account.

Seale does allege that he "believes" Peacock accessed his CTM account before December 2018. [VOL. I, p. 288.] *Twombly* commands more than a plaintiff's beliefs. *See* 550 U.S. at 1974 (holding plaintiffs must plead sufficient facts to "nudge[] their claims across the line from conceivable to plausible"). Seale has advanced no allegations that would create a plausible inference of access before December 2018. Thus, Seale's speculation about pre-December 2018 access is not entitled to a presumption of truth.

Nor is Seale's purported "impairment to reputation" sufficient to support a claim for actual damages. Op. Br. at 43. Seale argues these allegations "permitted the inference [that] Peacock's accessing of Seale's CTM account caused Seale to lose business, interfered with confidential client relationships, and harmed his reputation." *Id*. at 43-44. But how? Seale has not pled a single lost client or relationship attributed to the alleged December 2018 access of his CTM account. He also does not allege that Peacock disseminated any information that he allegedly viewed on the CTM site. Without more, Seale's allegations are bald and speculative.

Seale's supposed pain and suffering and emotional distress also cannot plausibly be attributed to the access of his CTM account. Seale alleges that he suffered emotional distress from

someone sending intimate images of him to friends and colleagues in November-December 2017. Yet there are no allegations that the access of the CTM account over a year later caused the distress. Moreover, a person of reasonable sensibilities would not suffer emotional distress from someone accessing and viewing an electronic platform that is used to generate real estate contracts.

Seale cites *Chadha v. Chopra*, 2012 WL 6044701 (N.D. Ill. Dec. 5, 2012); *Gallagher v. United States*, 2017 WL 4390172, (N.D. Cal. Oct. 3, 2017); and *Cornerstone Consultants, Inc. v. Prod. Input Sols., L.L.C.*, 789 F. Supp. 2d 1029, 1055–56 (N.D. Iowa 2011), for the proposition that other courts have found similar allegations actionable. These cases are distinguishable.

In *Chadha*, the defendant accessed the plaintiff's email account and thereafter sent several messages to plaintiff's close friends and professional contacts making false statements about his sexual practices. *See* 2012 WL 6044701, at *1. Here, the alleged defamatory statements predated the supposed access of the electronic account and thus cannot be attributed to it.

*Gallagher* involved the deprivation of a constitutional right which is tangible harm not at issue here. 2017 WL 4390172, at *1. There, the plaintiffs filed a class action for violations of the First Amendment, the SCA, and the California Constitution. *See id.* The court held that the plaintiffs' "cognizable First Amendment

14

injur[ies]" were sufficient to satisfy any actual damages requirement imposed by the SCA. *See id.* at 11. Here, no similar constitutional injuries have been alleged.

In *Cornerstone Consultants*, the defendant's conduct caused the disclosure of confidential attorney-client communications and revealed conversations between the plaintiff and a woman who was not his wife. *See* 789 F. Supp. 2d at 1055-56. In the case at bar, Seale neither alleged that Peacock disseminated any information obtained from his CTM account nor that his real estate contracts and communications were sensitive or privileged.

### 3. Seale Cannot Rely on Punitive Damages and Attorney Fees to State a Claim under the SCA.

Seale argues that he states a claim because punitive damages and attorney fees are sufficient "actual damages" under the SCA. This argument fails on numerous fronts.

Initially, Seale did not raise this argument with the trial court. He never even mentioned the word "punitive" in his briefing below. Nor did he provide any analysis of attorney fees under the SCA. Seale has thus waived this argument. *See Little v. Budd Co.*, 955 F.3d 816, 821 (10th Cir. 2020) ("[A]rguments raised for the first time on appeal are waived. This is true whether the newly raised argument is a bald-faced new issue or a new theory on appeal that

15

falls under the same general category as an argument presented at trial.") (internal quotations and citations omitted).

The Court can quickly dispense with Seale's argument concerning punitive damages should it address it. Seale *never* requested punitive damages in his first amended complaint. Curiously, Seale's opening brief claims otherwise, representing that he "specifically requested an award of punitive damages[.]" Op. Br. at p. 42. That simply is not true. And the Court need not take Peacock's word for it. Immediately following Seale's assertion is an image of the *ad damnum* clause from his first amended complaint. *See id.*; *see also* [VOL. I, p. 172]. The word "punitive" appears nowhere in the first amended complaint.[3]

Seale's failure to seek punitive damages forecloses his right to seek them here. *See Rojas v. City of Ocala*, 315 F. Supp. 3d 1256, 1289–90 (M.D. Fla. 2018) (plaintiff could not seek punitive damages when he failed to include a request for them in his complaint where his allegations included nothing but a "single conclusory statement referencing an intentional and reckless violation"); *cf. Scutieri v. Paige*, 808 F.2d 785, 791 n.2 (11th Cir. 1987) (plaintiff could seek punitive damages even though he did not request them in his *ad*

---

[3] The *ad damnum* clause in the first amended complaint mentions treble damages, but that relates to Seale's statutory civil theft claim under Colorado law.

*damnum* clause because he alleged sufficiently malicious conduct, referenced punitive damages in his allegations, and requested statutory damages which provide for punitive damages).

Additionally, there was no basis for the trial court to award Seale punitive damages on the facts alleged. Punitive damages are limited to "willful or intentional" violations of the SCA. 18 U.S.C. § 2707(c). Seale's complaints contain nothing but bald allegations concerning the alleged access of his CTM account in December 2018. Seale has offered no plausible allegations to suggest that there was any malicious conduct by Peacock. Indeed, Seale cannot point to a single record or communication that Peacock allegedly viewed or to any damages flowing from the CTM account access.

At most, Seale alleged a technical violation of the SCA which alone does not entitle him to punitive damages. *See*, *e.g.*, *Griffin v. Steeltek, Inc.*, 261 F.3d 1026, 1029 (10th Cir. 2001) (holding punitive damages could not be awarded under the Americans with Disabilities Act when the plaintiff only alleged a technical violation of the statute and failed to offer proof of injury); *Feld v. Feld*, 783 F. Supp. 2d 76, 77 (D.D.C. 2011) ("[A] mere 'technical invasion' of a plaintiff's rights where no actual harm has occurred cannot support punitive damages.").

Seale's attorney fees argument puts the cart before the horse. The SCA provides that attorney fees may be awarded only in "the

case of a successful action to enforce liability[.]" 18 U.S.C. 2707(c). A predicate to an award of attorney fees is thus a winning case, bringing the issue full circle: Can Seale prove a "successful action" without demonstrating actual damages? The answer again is no.[4]

## B. Seale Lacks Article III Standing Even If the SCA Does Not Require a Showing of Actual Damages.

Seale lacks standing regardless of the text of the SCA. *See* U.S. Const. art. III, § 2 (limiting federal judicial power to "cases" or "controversies"). Article III standing requires Seale to demonstrate that he suffered a concrete injury. *See Spokeo*, 136 S. Ct. 1540. Seale has not done so here. Not only does Seale fail to point to a single financial loss caused by the alleged access of his CTM account in December 2018, but he does not even allege that Peacock modified, copied, or viewed any specific data stored in that program. Stated differently, Seale did not plausibly plead any tangible harm caused by Peacock's alleged access and viewing of his CTM account. At most, he has alleged intangible harm.

The Supreme Court recently clarified the circumstances when an intangible harm can constitute a concrete injury for purposes of Article III standing. *See TransUnion*, 141 S. Ct. at 2204-05. *TransUnion* involved a class of consumers whose credit reports

---

[4] Seale did not seek equitable relief. Accordingly, he cannot use that as the basis for a "successful action."

erroneously reflected that they were placed on a "specially designated nationals list" by the Office of Foreign Assets Control, indicating they were subject to sanctions and with whom entities were forbidden to transact business. *Id.* at 2200-02. Many of the class members, however, never had their credit reports distributed to any third party, and thus, did not suffer any tangible harm. *Id.* at 2209-10. Nonetheless, the plaintiffs argued that these class members had Article III standing because of the intangible risk that their erroneous credit reports *could* have been distributed to third parties. *Id.* at 2210. The Supreme Court held this was insufficient for Article III standing. *Id.* at 2211. The Supreme Court began its analysis by noting that certain intangible harms can be concrete for purposes of Article III:

> Chief among them are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion.

*Id.* at 2204.

The Supreme Court further reiterated its holding in *Spokeo* that Congress can elevate intangible harms by passing laws that proscribe certain conduct. *Id.* at 2205. That said, the Court explained that Congress "may not simply enact an injury into existence, using its lawmaking power to transform something that

is not remotely harmful into something that is." *Id.* (internal quotation and citations omitted). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* In short, Congress cannot do what Article III prohibits: create standing for claims that are untethered to any real risk of concrete harm or injury, intangible or otherwise.

Here, the unauthorized access and viewing of an electronic real estate contracting platform without resulting damage is not the sort of harm that would give rise to lawsuits at common law. The closest thing Seale's SCA claim resembles is trespass to chattels. *See Van Alstyne*, 560 F.3d at 208 (analogizing an SCA violation to trespass to chattels). But that claim would not be actionable because common law trespass to chattels requires proof of actual harm. *Id.* ("[N]othing in the common law of trespass to chattel alters 'the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed.'") (quoting *Doe*, 540 U.S. at 621); *see also* Restatement (Second) of Torts § 218 cmt. e ("[T]he interest of a possessor of a chattel in its inviolability, unlike the similar interest of a possessor of land, is not given legal protection by an action for nominal damages for harmless intermeddlings with the chattel."). This

again brings us back to the first problem: Seale's failure to plausibly allege actual harm from this "digital" trespass to chattel.

Seale's SCA claim has no nexus to an interest protected at common law. Nor has he been concretely harmed by the alleged SCA violation. *See Spokeo*, 136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."). Accordingly, Seale lacks Article III standing.

### C. Seale Did Not Plausibly Allege that Peacock Obtained, Altered, or Prevented Authorized Access to a Wire or Electronic Communication.

The SCA provides:

(a) Offense.--Except as provided in subsection (c) of this section whoever--

(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceeds an authorization to access that facility;

and thereby *obtains, alters, or prevents authorized access to a wire or electronic communication* while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701(a) (emphasis added).

21

Seale did not allege with any specificity that Peacock actually obtained, altered, or prevented authorized access to a wire or electronic communication when he allegedly accessed the CTM account, even if the access was intentional.[5] This alone is fatal to his SCA claim. *See Fischer v. Mt. Olive Lutheran Church*, 207 F. Supp. 2d 914, 926 (W.D. Wis. 2002) ("However, accessing plaintiff's Hotmail account intentionally is not enough in and of itself to violate the act. Plaintiff must also show that defendants obtained, altered or prevented his authorized access to his email account.").

## II.    THE DISTRICT COURT PROPERLY DENIED SEALE LEAVE TO AMEND TO SUBSTITUTE PEACOCK FOR "JOHN DOE."

### A.    The District Court Applied the Correct Legal Standard.

Seale argues the district court applied the wrong legal standard when it denied his motion to amend. Seale is wrong. Two rules govern motions to amend: Fed. R. Civ. P. 15(a) and 16(b)(4). Rule 15(a) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 16(b)(4), in turn, provides that a scheduling order "may be modified only for good cause and with the judge's consent." "After a scheduling order deadline, a party seeking leave to amend must

---

[5] This issue was not raised below; however, an appellee may urge in support of affirmance based on any "matter appearing in the record." *Jennings v. Stephens*, 574 U.S. 271, 276 (2015).

demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n,* 771 F.3d 1230, 1240 (10th Cir. 2014).

Here, the district court correctly applied the "good cause" standard under Rule 16(b)(4). The scheduling order imposed a March 20, 2020 deadline for amendments of pleadings. [VOL. I, p. 237.] Seale neither sought nor received an extension of this deadline. Seale thereafter filed his motion to amend on November 23, 2020, more than eight months after the deadline. Accordingly, Rule 16(b)(4) governed the motion.

Seale, however, argues that the district must have impliedly extended the scheduling order deadline because it granted him additional time to obtain service on the unknown defendants. Seale conflates the relief he sought and received with a modification of a scheduling order under Rule 16(b)(4). It is true that the district court granted Seale an extension through November 30, 2020 to "identify and serve the unknown defendants" and that Seale filed his motion to amend before that deadline. [VOL. II, p. 36.] But Seale sought relief pursuant to Rule 4(m) which governs extensions of time to obtain service on a defendant—in fact, Seale's motion does not even cite Rule 16(b)(4). [VOL. II, pp. 30-35.]

Seale cites no authority—and the undersigned is not aware of any—holding that an extension under Rule 4(m) automatically enlarges the deadlines imposed by a scheduling order, thereby obviating a need to demonstrate "good cause" and file a separate motion under Rule 16(b)(4). The facts here exemplify why such a rule would not make sense: How can a district court evaluate good cause without first knowing the identity of "John Doe" and the efforts undertaken by the plaintiff to timely discover it? That Seale won relief under Rule 4(m) does not *ipso facto* mean that he obtained a modification of the scheduling order pursuant to Rule 16(b)(4).

Seale never moved to amend the scheduling order and the district court never made such an amendment.

### B.  Any Error Was Harmless Because the District Court Would Have Been Within Its Discretion to Deny Amendment under Fed. R. Civ. P. 15(a).

Even if the standard for amendment under Rule 15(a) applied, the district court would have been within its discretion to deny amendment because Seale was not diligent in bringing the motion. Untimeliness alone is sufficient to deny amendment under Rule 15(a), especially when the party filing the motion has no adequate explanation for the delay. *See Pallottino v. City of Rio Rancho,* 31 F.3d 1023, 1027 (10th Cir. 1994); *Le Baud v. Frische*, 156 F.3d 1243, 1245 (10th Cir. 1998). Importantly, a district court may deny

24

amendment based on untimeliness alone; no showing of prejudice is necessary. *See First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1132–33 (10th Cir. 1987).

*First City Bank* is instructive. In that case, the district court denied leave to amend under Rule 15(a) after reviewing "the chronology of events" in the lawsuit and examining the appellant's "latest submission." *Id.* The trial court held that the proposed amendment was untimely. *Id.* This Court affirmed, holding that the "court clearly was acting within the bounds of its discretion." *Id.*

It makes no difference whether Rule 15(a) or 16(b)(4) governed Seale's motion to amend. Under either standard, the district court acted within its discretion to deny the proposed amendment.

## C. The Record Supports the District Court's Finding of Untimeliness and Undue Delay.

Seale sought leave to file his third amended complaint on November 23, 2020—over eight months after the deadline for amendments had passed. [VOL. II, pp. 37-39.] Seale claimed in his motion that he "recently obtained additional factual information" that justified substituting Peacock for "John Doe." [VOL. II, p. 38.] This "new" evidence included the following:

- On April 16, 2020, Seale received documents responsive to a subpoena he served on an automobile dealership known as Liberty Toyota. [VOL. II, pp. 79-80.] According to Seale, these

documents confirmed that Peacock was present at the dealership when Seale's CTM account was accessed from an internet protocol address associated with the Liberty Toyota dealership. [*Id.* at 118]

- On May 26, 2020, Seale received an expert report that purported to confirm that it was Peacock who accessed the CTM account. [VOL. II, pp. 89-104.]

- Seale found a "selfie" taken by Peacock in front of a mirror which shows Peacock's phone. [VOL. II, p. 59.] Seale did not identify when he found this "selfie."

- Seale found another picture which showed his tablet when it was opened to one of his internet dating profiles on the website "Manhunt." [*Id.*] This image purports to show a reflection of the individual taking the picture, an individual that Seale is confident is Peacock based on similarities to the phone shown in the "selfie." [*Id.* at pp. 59-60.] Seale did not specify when he found this photograph.

- Seale does not allege that the tablet image was ever sent to anyone; he merely used it to show that Peacock had seen the "Manhunt" dating profile. [*Id.* at p. 61.]

- Seale recalled a therapy session from either October or November 2016, during which Peacock showed Seale one of the photographs that was included in the November-

December 2017 mailings. [*Id.* at p. 60.] Seale does not specify when he recalled this therapy session.

- Some of the images included in the November-December 2017 mailings were posted by Seale on his "Manhunt" internet dating profile. [*Id.*, p. 58.]

Based on these allegations, the district court held that Seale's proposed amendment was untimely. The district court noted that Seale waited months after receiving the subpoenaed documents and the expert report before he moved to amend. [*Id.* at 131.] Likewise, Seale failed to identify when he discovered the photographs that supposedly connected Peacock to the claims related to the November-December 2017 mailings. [*Id.* at 130.] The timing of Seale's proposed amendment and the dearth of details about the "recently obtained" information provided a sufficient basis for the district court to make a finding of untimeliness and undue delay.

Seale makes excuses for why he was so late in seeking to amend his complaint when he presumably had in his possession the subject photographs for months or possibly even years. Seale claims there was an "oversight" because he did not "initially recognize the significance of what the pictures showed" and did not previously have "an adequate opportunity to review and consider the details in the photographs." Op. Br. at p. 50. Seale's postulating raises more questions than it answers. When did he first review the

photographs? When did he finally make the connection? Nothing Seale offers provides a reasoned basis for the tardy amendment.

### D. Seale's Proposed Amendment Is Futile in Any Event.

While the court below did not reach the issue of futility of amendment, Seale's proposed amendment is futile on two grounds, and the Court can affirm on that basis alone. *See Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) ("A district court may refuse to allow amendment if it would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.") (internal quotations and citations omitted).

#### 1. Seale Did Not Plausibly Allege Peacock is "John Doe."

First, Seale does not plausibly allege that Peacock is "John Doe." In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Supreme Court held that a complaint does not meet the plausibility pleading standard when all it offers are mere "naked assertions devoid of further factual enhancement." (internal citation omitted). Rather, a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Seale's proposed third amended complaint does not cross this threshold.

Seale's threadbare allegations do not raise a reasonable inference that it was Peacock who sent the November-December 2017 mailings. Seale's conclusion to the contrary is conjecture. The

28

most that can be inferred from Seale's allegations are that Peacock owns a cellphone, once possessed an intimate photograph of his spouse that Seale thereafter posted on his "Manhunt" internet dating profile, and once viewed Seale's internet dating profile. Indeed, Seale's allegations appear to rest entirely on an epiphany he must have had after reviewing and comparing some old photographs and recalling a memory from a therapy session four years ago. This is insufficient as a matter of law thus rendering the proposed amended complaint futile.

### 2.   Seale's Claims Are Time Barred.

Second, the proposed claims are time barred. In *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1388-89 (10th Cir. 1984), and *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004), this Court adopted and applied a rule that generally prohibits using "John Doe" pleadings to circumvent statutes of limitation. Rather, the substitution of a named defendant for the original "John Doe" amounts to "adding a new party" to whom the original filing date does not relate back. *Garrett*, 362 F.3d at 696. This is because "a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake concerning the identity of the proper party' within the meaning of Rule 15(c)(3)(B)." *Id.*

Seale's proposed amended complaint alleged thirteen counts of libel *per se*, intentional infliction of emotional distress, invasion

29

of privacy by intrusion into seclusion, and invasion of privacy by public disclosure of private facts. [VOL. II, pp. 64-73.] All of these claims are based on conduct that occurred in November and December 2017 (*i.e.*, when the mailings were sent).

Seale, however, did not file his proposed third amended complaint until November 23, 2020. This is well beyond the one- and two-year statutes of limitation for Seale's claims: libel (one year), *see* Colo. Rev. Stat. § 13-80-103(1)(a); intentional infliction of emotional distress (two years), *see* Colo. Rev. Stat. § 13-80-102(1)(a); and privacy claims (two years), *see* Colo. Jury Instr. Civ. 22:12 n. 2 (suggesting that the general two-year tort statute of limitation applies to privacy actions). Moreover, these claims accrued at the time of injury which is when the mailings were sent. *See Russell v. McMillen*, 685 P.2d 255, 258 (Colo. App. 1984) ("libel accrues when the defamatory statements are published").

Moreover, there is no justification to equitably toll the statute of limitations. The entire basis for Seale's epiphany concerned photographs and information already in his possession. Seale merely alleges that he finally connected the dots when "[r]ecently" reviewing "some photographs on his computer[.]" [VOL. II., p. 59.]. That is not sufficient to reset the clock.

Seale's claims are thus barred by the statutes of limitation and any amendment would be futile on that basis. *See Aldrich v.*

*McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute. Statute of limitations questions may, therefore, be appropriately resolved on a Fed. R. Civ. P. 12(b) motion.") (internal citations omitted).

### III. The District Court Properly Dismissed Seale's CTM Claims with Prejudice.

Seale alleged three claims related to the alleged access of his CTM account: statutory civil theft under Colo. Rev. Stat. § 18-4-401(1), invasion of privacy by appropriation of name or likeness, and violation of the SCA. The district court dismissed these claims with prejudice. This order should be affirmed on futility grounds. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (holding that dismissal with prejudice appropriate when "granting leave would be futile").

Seale's "clarifying" allegations in his proposed second amended complaint still do not connect *any* damage to the alleged access of his CTM account. Peacock addresses each claim in turn.

<u>Civil Theft</u>: Seale premised his civil theft claim on Peacock's alleged wrongful access of Seale's CTM account. Seale alleged that Peacock "stole" the data stored on this program. The district court

dismissed this claim because Seale did not "plausibly allege that [Peacock's] access of [Seale's] CTM account permanently deprived [Seale] of anything of value." [VOL. I, p. 263.] The proposed second amended complaint alleges that Peacock's "unauthorized access upon information and belief allowed [Seale] to cause several clients and or employees of Seale to permanently leave their business relationships or employ with [Seale]." [*Id.* at 290.] Seale now frames these losses as "client information, client contracts, and expected commission income." Op. Br. at 54.

The proposed second amended complaint suffer from the same fatal flaw: Seale does not plausibly allege that Peacock "stole" anything by accessing and viewing the CTM account. Moreover, there is no basis to infer that Peacock intended to permanently deprive Seale of the data stored on the CTM account by viewing it.

Invasion of Privacy by Appropriation of Name or Likeness: Seale's invasion of privacy claim alleged that Peacock committed that tort by using Seale's login credentials to access the CTM account. The district court dismissed this claim because Seale failed to plausibly allege damages or how "access to the CTM account caused mental anguish." [VOL. I, p. 264.] Seale's proposed second amended complaint seeks to cure this deficiency by alleging that certain business relationships were harmed by the use of his CTM login credentials.

Seale again does not plausibly connect any of his business losses to Peacock's supposed use of his CTM login credentials. While Seale now identifies certain clients and businesses who had previously parted ways with him, he does not plausibly allege that those losses had anything to do with the purported access of his CTM account. The closest Seale comes to alleging this is in paragraph 29 of his proposed second amended complaint in which he alleges that he "believes" Peacock accessed his CTM "substantially earlier in the year" such that those losses could be attributed to Peacock's subsequent access of the CTM account. [VOL. I, p. 288.] But a party cannot cross the pleading threshold by merely reciting his beliefs. The law commands more: plausible allegations moored in fact and divorced from speculation.

Seale faces another hurdle that he cannot overcome. Any lost business from the accesses of the CTM account are commercial damages which are not recoverable under a claim of invasion of privacy based on appropriation of name or likeness. *See Joe Dickerson & Assocs., LLC v. Dittmar*, 34 P.3d 995, 1002 (Colo. 2001). Rather, such damages must be pursued under the tort of publicity, which Seale did not allege. *See id.*; *see also Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1220 (10th Cir. 2004) (assuming the Colorado Supreme Court would recognize the tort of publicity).

Seale's new allegations of emotional distress are similarly futile. Accessing another's business program to view client information would not cause mental anguish in a person of ordinary sensibilities. But even if Seale had some sort of hypersensitivity or emotional attachment to the client data stored on his CTM account, the claimed emotional distress is speculative and unsupported. Rather, Occam's razor suggests any emotional distress is attributed to the dissemination of Seale's sexually explicit "Manhunt" dating profile rather than to someone viewing his CTM account.

<u>Stored Communications Act</u>: As set out above, there are no facts connecting any wrongful access of the CTM account to any damages. Accordingly, leave to amend was properly denied.

## IV. PEACOCK SHOULD BE AWARDED HIS ATTORNEY FEES RELATED TO THIS APPEAL.

The district court awarded Peacock his attorney fees pursuant to Colo. Rev. Stat. § 13-17-201. That statute entitles a party who successfully dismisses an action sounding in tort via a Rule 12 motion to recover his attorney fees. Seale did not challenge the the fee order other than noting that reversal on the merits would also require reversal of the fee order. This is true, but Peacock is also entitled to his fees on appeal should he prevail. *See Henderson v. Bear*, 968 P.2d 144, 148 (Colo. App. 1998) (a party who successfully defends a dismissal order on appeal is entitled to recover fees).

## CONCLUSION

The judgment of the district court should be affirmed.

Dated: August 15, 2021          Respectfully submitted,

s/ *Michael D. Kuhn*

Michael D. Kuhn
Andrew E. Swan
LEVENTHAL | LEWIS
KUHN TAYLOR SWAN PC
620 North Tejon Street, Suite 101
Colorado Springs, CO 80903
T: (719) 694-3000
F: (866) 515-8628
mkuhn@ll.law
aswan@ll.law

*Counsel for Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type style requirements of Fed. R. App. P. 32(a)(6), and the type-volume limitations of Fed. R. App. P. 29(a)(5) because it is proportionally spaced, has a typeface of 14-point Century font, and contains 7,351 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I also certify that pursuant to this Court's guidelines on the use of the CM/ECF system:

  a) all required privacy redactions have been made per 10th Cir. R. 25.5 and Fed. R. App. P. 25(a)(5);

  b) the hard copies that will be submitted to the Clerk's Office are exact copies of the ECF filing; and

  c) the ECF submission was scanned for viruses using Microsoft Defender Antivirus, and no viruses were detected.

*s/ Michael D. Kuhn*
Michael D. Kuhn

*Counsel for Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2021, the foregoing was electronically filed with the Clerk for the United States Court of Appeals for the Tenth Circuit using the CM/ECF system. The system will serve all counsel of record.

s/ Michael D. Kuhn
Michael D. Kuhn

*Counsel for Appellee*